UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WALTERS,<br><br>        Plaintiff,<br><br>v.<br><br>TARGET CORP.,<br><br>        Defendant. | Case No.: 3:16-cv-01678-L-MDD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [Doc. 8]** |

Pending before this Court is Defendant Target Corporation's ("Target") Motion to dismiss [Doc. 8] the First Amended Complaint [Doc. 3].). The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Target's Motion to Dismiss.

//
//
//
//
//
//
//

## I. BACKGROUND

This case is a putative class action stemming from Target's issuance of a product called a Target Debit Card ("TDC"). The TDC is a card that links to a cardholder's deposit bank account ("deposit account"). By swiping a TDC, a cardholder can purchase merchandise from Target at a five percent discount. Target, in turn, withdraws funds from the linked deposit account to cover any purchases made with the TDC. To become a TDC cardholder, a customer must sign an agreement with Target that articulates various terms and conditions. ("The Agreement" [Doc. 8-3].)

In the Agreement, in advertising, through customer / cashier interactions, and by the name of the card itself, Target markets the TDC as a "debit card." Plaintiff alleges that an inherent feature of a debit card is immediate processing of a transaction by either seizing[1] deposit account funds or declining a transaction. Because of this immediate processing feature, it is impossible for the user of a normal debit card to spend more money than they have available in their depository account and thereby trigger overdraft or non-sufficient funds fees.

The TDC, by contrast, does not thus process transactions immediately. Rather, there is a severe lag in time, often up to ten days, separating the use of a TDC card and the processing of the transaction. This delayed transaction occurs over the Automated Clearinghouse ("ACH") network, a processing network that typical debit cards do not utilize.

By marketing the TDC as a "debit card", Plaintiff alleges Target misleads cardholders into believing it will process transactions immediately. As a result, many TDC customers whose accounts have adequate funds at time of transaction no longer have adequate funds several days later when the ACH transaction ultimately processes.

---

[1] The seizure, or "hold" of deposit account funds sufficient to cover the transaction occurs immediately with a normal debit card. The actual transfer of the held deposit account funds to the payee occurs later. (FAC ¶ 25–26.)

Per the Agreement, this resulting inadequacy of funds triggers Returned Payment Fees ("RPFs") to Target. It also triggers overdraft or non-sufficient funds fees to a customer's depository bank. Plaintiff alleges that Target's practices of misrepresenting the TDC as a debit card yet delaying the processing of TDC transactions is intentional, with the aims of (1) saving on ACH transaction fees by grouping transactions together over several days and processing them en masse and (2) generating RPF fees.

On August 15, 2016, Plaintiff filed a first amended putative class action complaint alleging (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) unconscionability; (5) conversion; (6) violation of California Business and Professions Code § 17200 et seq. ("UCL"); and (7) violation of California Civil Code § 1750 ("CLRA"). (See FAC [Doc. 3].) Target now moves to dismiss all claims against it. (See MTD [Doc. 8].) Plaintiff opposes. (See Opp'n [Doc. 11].)

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. *Id.* The court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court has explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964–65 (2007) (internal citations and

quotation marks omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, courts may consider documents specifically identified in the complaint whose authenticity is not questioned by the parties. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statutes on other grounds). Moreover, courts may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* The court may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

### III.  BREACH OF CONTRACT

To sustain a breach of contract claim, a plaintiff must, *inter alia*, show that the defendant broke a promise. *Guthmiller v. Deloitte & Touche, LLP*, 699 N.W.2d, 498 (S.D. 498).[2] Target contends Plaintiff's breach of contract claim is defective because Plaintiff has failed to articulate any conduct undertaken by Target that breached a contractual promise. Plaintiff opposes by arguing that Target promised the TDC would

---

[2] Given the lack of briefing on the issue, it is not entirely clear whether the law of South Dakota or California applies. Target contends South Dakota law applies pursuant to a choice of law provision in the Agreement. (MTD 6:20.) Plaintiff, it seems, does not currently dispute the validity of the choice of law provision but would like to reserve the right to do so. (Opp'n 4:21:2.) However, each party stipulates that, in regard to the claims presented, there are no relevant differences between the law of South Dakota and California. (MTD 6:20 n.4; Opp'n 4:21 n.2.) Accordingly, the Court will apply the law of these two states interchangeably on this motion. However, any subsequent dispositive motions in this case shall include briefing on the issue of whether the choice of law provision in the Agreement is valid.

function like a typical deposit account debit[3] card in the sense that, at point of sale, Target would either seize adequate funds in the deposit account or decline the transaction.

The First Provision states that "[b]y using your [TDC], you authorize us to initiate an electronic fund transfer ("EFT") for the full amount of the transaction. . ." (Agreement § 1.)  Plaintiff asserts that this language establishes that the "authorization" and "initiation" are contemporary in time, as is the case with most traditional "debit cards" issued by deposit banks. The Second Provision states "[y]ou agree that you will not use your Card to make purchases for amounts in excess of available funds you have in your Deposit Account as determined by the financial institution holding your Deposit Account ("Depository Bank") as of the date the Depository Bank processes the EFT." (Id.)  Plaintiff urges that this language implies an immediate determination of whether there are sufficient funds in the depository account to cover the transaction because, otherwise, Target would supposedly be asking the customer to guarantee something the customer cannot control: the balance of their account at a later date when the EFT actually processes.  Finally, the Third Provision provides that "[w]hen you use your [TDC] you will be limited by the amount of funds in your Deposit Account and any available overdraft overdraft line of credit that you may have in connection with your Deposit Account (if applicable), as of the date the Depository Bank receives and processes an EFT." (Agreement §3.)  Plaintiff claims this language constitutes an affirmative promise that Target will limit use of the TDC when insufficient funds exist at time of purchase.

The Court does not find Plaintiff's arguments persuasive.  As to the First Provision, there simply is no language suggesting any sort of temporal relationship, whether immediate or separated by many days, between "authorization" and "initiation." As to the Second Provision, Plaintiff's contention that a TDC holder is unable to control

---

[3] Explain difference between depository and regular debit card

whether or not they have sufficient funds on deposit to cover a non-instant EFT is not true.  The situation is no different than writing a check: a depositor has the power to guarantee cover by making sure the account holds funds equal to or greater than the transaction until the transaction posts.  Regarding the Third Provision, the language "as of the date the Depository Bank receives and processes an EFT" defeats Plaintiff's argument.  If the EFT can occur several days later, it follows that target is not promising to instantaneously determine sufficiency of funds and thus limit TDC transactions.  Rather, the effect of this language, when read within the contract as a whole, is that the TDC card holders are limited to the funds available at time of EFT.  If the transaction exceeds that limit, an RPF will result.  (Agreement § 6.)

Furthermore, even if these provisions had a tendency to create ambiguity as to whether the Agreement promises immediate processing, such ambiguity is unequivocally resolved by the Agreement's explicit declaration that "[y]ou agree that any EFT may occur several business days after your transaction(s) have occurred and after the date shown on your transaction receipt(s)."  (Agreement §1.)

Plaintiff also contends Target promised that TDC transactions could not trigger NSF fees from linked deposit bank accounts.  (Opp'n 8:2–9:8.)  Plaintiff cites no provision in the Agreement that contains this express promise.  Rather, Plaintiff seems to argue that because the Agreement mentions that TDC transactions can trigger overdraft fees from a depository bank, it follows that the Agreement promises TDC transactions will not trigger NSF fees.  This argument is a non sequitur.  Further, having read the entire Agreement, the Court finds no language in it suggesting deposit account NSF fees cannot result from a TDC transaction.  For these reasons, the Court finds Plaintiffs have failed to allege Target breached any promise it made to Plaintiff.  The Court therefore **GRANTS**, with leave to amend, Target's Motion as to the breach of contract claim.

## IV. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Target contends that Plaintiff's implied covenant of good faith and fair dealing claim fails because the express language of the contract permits the conduct Plaintiff complains of, to wit, always (1) processing EFT's several days after a transaction and (2) always charging the maximum RPF fees. (MTD 11:3–12:16.) The implied covenant of good faith and fair dealing requires that, when a contract vests discretion in a party, that party must exercise their discretion in good faith. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 6 Cal. Rptr. 2d 467, 483–84 (1982).

The express language of the Agreement provides that Target *may* process EFT's several days after a transaction and charge maximum RPF fees. Plaintiff contends that, even though the Agreement gives Target the discretion regarding the timing of transactions and RPF amounts, Target's practice of *always* processing the EFT's several days late and charging maximum RPF's constitutes an abuse of this discretion. Construing all allegations in favor of Plaintiff's, the Court agrees. It seems that a reasonable jury could conclude that Target exercised its discretion in bad faith by *always* delaying EFT's and charging maximum RPF's when it said only that it *may* engage in such practices. *See Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1113 (N.D. Cal. 2010). Accordingly, the Court **DENIES** Defendant's Motion as to the breach of the implied covenant of good faith and fair dealing claim.

## V. UNJUST ENRICHMENT

Plaintiff alleges Defendant unjustly enriched itself by collecting RPFs. (FAC ¶¶ 121–127.) Defendant argues that this unjust enrichment claim must fail because the parties have an express contract governing the subject matter of this claim. Defendant is correct. It is hornbook law that "when there is a valid and enforceable contract. . . liability for compensation or other resolution of the breach is fixed exclusively by the contract." *Johnson v. Larson*, 779 N.W. 2d 412, 416 (S.D. 2010); *See also Lance Camper Mfg. Corp. v. Republic Indem. Co. of Am.*, 44 Cal. App. 4th 194, 203 (1996) ("it

is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter"). Here, there can be no dispute that the Agreement covers the subject matter of RPFs. (See Agreement § 8.) Accordingly, the Court **GRANTS WITH PREJUDICE** Defendant's Motion as to the unjust enrichment claim.

## VI. UNCONSCIONABILITY

Plaintiff alleges unconscionability as an independent cause of action. (FAC ¶¶ 128–131.) However, unconscionability is a doctrine available only to a party defending against a breach of contract claim. It is not an independent cause of action upon which plaintiff can recover damages. *Nygaard v. Sioux Valley Hosp. & Health Sys.*, 731 N.W. 2d 184, 196 (S.D. 2007); *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 794 (1989). Accordingly, the Court **GRANTS WITH PREJUDICE**, Target's Motion as to the unconscionability cause of action.

## VII. CONVERSION

There is no dispute that consent defeats a claim for conversion. *Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008). Rather, the dispute focuses on whether Plaintiff consented to Target's charging of RPFs. Target cites to § 6 of the Agreement, which provides that "[i]f the Depository Bank returns an EFT unpaid for any reason, you agree to pay a [RPF]…" (Agreement § 6.) Plaintiff argues that this provision effectively consents only to RPF charges that would result if the TDC functioned like a "normal debit card." This argument fails for the same reasons the breach of contract claim fails. To wit, the Agreement accurately explains the delayed manner in which a transaction will generate an EFT and states that unpaid EFTs trigger RPFs. Thus, by signing the Agreement, Plaintiff provided consent. The Court therefore **GRANTS WITH PREJUDICE** Target's Motion as to the conversion cause of action.

## VIII. CONSUMER PROTECTION CLAIMS

Target advances several arguments as to why Plaintiff has failed to adequately plead his UCL and CLRA claims. Target argues (1) the safe harbor doctrine immunizes it from liability; (2) Plaintiff lacks standing under the CLRA or the fraud prong of the UCL; (3) Plaintiff has failed to plead an actionable misrepresentation; and (4) Plaintiff has failed to plead past Fed. R. Civ. P. 9(b).

### A. Safe Harbor

Target's broadest argument is that the safe harbor doctrine immunizes it from UCL or CLRA liability. In *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182–83 (1999), the Supreme Court of California explained that

> [a]lthough the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor.

*Id.* at 182. Thus, where legislation affirmatively permits specific conduct, rather than simply fails to prohibit it, that conduct is not actionable under the UCL or CLRA. *Id.* at 184; *Bourgi v. West Covina Motors, Inc.*, 166 Cal. App. 4th 1649, 1661 (1008) (safe harbor applies to CLRA claims too). This safe harbor also applies where regulations affirmatively permit specific conduct. *See Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1166 n.3 (9th Cir. 2012) (internal citations omitted). Target argues that the safe harbor applies here because the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq., and its implementing Regulation E, 12 C.F.R. 205.1 permit its actions of (1) not immediately initiating or declining an EFT; (2) charging a fee for declined EFTs; (3) not disclosing the fact that a depository bank may charge an NSF fee if an EFT exceeds available funds; and (4) using the ACH Network to process EFTs. (MTD 16:19–17:25.)

The main problem with this argument is that Plaintiff's consumer protection claims

do not challenge the legality of how the TDC actually processes transactions. They challenge the way Target represented that the TDC processes transactions. More specifically, the gist of the consumer protection claims is that, by holding the TDC out as a "debit card", Target misled Plaintiff into believing it would function like a typical debit card, i.e., it would instantly seize funds or decline a transaction. Nothing in the EFTA or Regulation E affirmatively permits Target to misrepresent the true nature of a product. Accordingly, the Court finds Target's safe harbor argument unpersuasive.

### B. Standing

Target contends Plaintiff lacks standing to bring his CLRA or UCL fraud claim because he has not alleged actual reliance upon any misrepresentation. Target is correct that a Plaintiff must allege actual reliance to have standing to bring a misrepresentation theory UCL or CLRA claim. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011). Target contends Plaintiff thus lacks standings because he has not alleged "that he reviewed the Agreement or any TDC advertisements and then signed up for and used the TDC as a result." (MTD 19:4–5.) This argument lacks merit because, regardless of whether he read the Agreement or any specific advertisements, Plaintiff alleges that Target asked him if he wanted to sign up for a "debit card" and he signed up because this representation led him to conclude that, like a classic debit card, he would not incur fees for using the card. (FAC ¶¶ 35, 53, 75–78.) Plaintiff has adequately alleged standing.

### C. Actionable Misrepresentation

A false advertising claim is not cognizable under the FAL or UCL unless the predicate statement would mislead the "reasonable consumer." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006). The issue of whether advertising is misleading to the reasonable consumer is generally a question for the trier of fact inappropriate for resolution on a motion to dismiss. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008).

1    Plaintiff alleges that consumers expect debit cards to immediately process
2 transactions by seizing funds or declining a transaction. Target's conduct of holding the
3 TDC out as a "debit card", Plaintiff argues, is misleading because the TDC does not thus
4 process transactions immediately. Target argues that by holding the TDC out as a "debit
5 card" it could not have misled a reasonable consumer into believing that it was akin to a
6 classic debit card because the Agreement clearly explains how the TDC functions and
7 that it may be different than other debit cards.
8    Target's argument assumes that the reasonable consumer would read and
9 understand the fine print of the Agreement before signing up for and using the TDC. The
10 Court agrees with Plaintiff that the validity of this assumption is a question of fact
11 inappropriate for resolution on a motion to dismiss. *See Williams,* 552 F.3d at 939
12 (reasonable consumers are not required to look past misleading labels to clarifying fine
13 print).

### D.  Fed. R. Civ. P. 9(b)

16    Target argues Plaintiff has failed to allege the details of any fraudulent
17 misrepresentation with the particularity required by Rule 9(b). Rule 9(b) provides that
18 "[i]n alleging fraud or mistake, a party must state with particularity the circumstances
19 constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a
20 person's mind may be alleged generally." Fed. R. Civ. P. 9(b). More precisely, "the
21 circumstances constituting the alleged fraud [must] be specific enough to give defendants
22 notice of the particular misconduct so that they can defend against the charge and not just
23 deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (internal citations and
24 quotation marks omitted). Thus, to survive Rule 9(b), a complaint must allege the "who,
25 what, when, where, and how" of the misrepresentation. *Id.* The complaint must also "set
26 forth an explanation as to why the statement or omission complained of was false and
27 misleading." *Id.*

1  Here, Plaintiff has alleged that, during the statutory limitations period preceding
2  the filing of the Complaint, Target misrepresented the true nature of the TDC by labeling
3  it as a "debit card" and describing it as such in advertisements and in the Agreement.
4  Plaintiff has further alleged that this is false because the TDC lacks a central
5  characteristic of a "debit card": instant transaction processing in the form of a seizure of
6  funds or declined transaction.  Such allegations are sufficiently particularized to "give
7  [Target] notice of the particular misconduct so that they can defend against the charge
8  and not just deny that they have done anything wrong**."**  Accordingly, the Court **DENIES**
9  Target's Motion as to the UCL and CLRA claims.[4]  Having found Plaintiff's allegations
10 sufficiently particularized to survive Rule (b), the Court need not consider whether Rule
11 9(b) would be fatal to the UCL and CLRA claims if they were not sufficiently
12 particularized.
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //

---

[4] Having found Plaintiff's allegations sufficiently particularized to survive Rule (b), the Court need not consider the parties' arguments as to whether Rule 9(b) would be fatal to the UCL and CLRA claims if they were not sufficiently particularized.

IX. **CONCLUSION & ORDER**

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Target's Motion to Dismiss as follows:

- Plaintiff's breach of contract claim is dismissed without prejudice.
- Plaintiff's unjust enrichment, unconscionability, and conversion claims are dismissed with prejudice.
- Plaintiff's UCL, CLRA, and breach of the implied covenant of good faith and fair dealing claims survive this motion.
- If Plaintiff chooses to file a second amended complaint, he must do so within 21 days of the entry of this order.

IT IS SO ORDERED

Dated:  February 14, 2017

_____
Hon. M. James Lorenz
United States District Judge