JEFFREY KALIEL (CA 238293)
SOPHIA GOREN GOLD (CA 307971)
**KALIEL PLLC**
1875 Connecticut Ave., 10th Floor
Washington, D.C. 20009
Telephone: (202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*

JEFFREY OSTROW (pro hac vice)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd, 5th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
*ostrow@kolawyers.com*
***Counsel for Plaintiff and the Proposed Class***

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WALTERS, *on Behalf of Himself and Those Similarly Situated*, <br><br> Plaintiff, <br><br> vs. <br><br> TARGET CORP., <br> Defendant. | CASE NO. 3:16-CV-01678-l-MDD <br><br> **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE** |

000001/01084577_1                              1

Pursuant to the Magistrate Judge's Chambers Rules, the Parties hereby submit this Joint Motion for Determination of Discovery Dispute, and accompanying Memorandum of Points and Authorities in Support of the Joint Motion, and state as follows:

## I. The Request and Questions in Dispute and the Verbatim Response to the Request and Questions

The two issues in dispute are not Interrogatories or other Requests, and thus do not lend themselves perfectly to the Joint Motion procedure. Nonetheless, the parties have attempted to conform the dispute to those procedures.

### A. ESI Dispute

Plaintiff has requested that additional ESI searches be conducted relating to the name change from the "Target Check Card" to the "Target Debit Card" in 2010. Plaintiff contends that he was not aware of the name change until after initial ESI searches were conducted and documents were produced that referenced the change. Moreover, because Plaintiff contends that he has reason to believe the current ESI custodians were not involved with the name change, Plaintiff has asked Target to identify three new document custodians who had primary responsibility for the name change from the Target Check Card to Target Debit Card in 2010. Plaintiff further asked Target to run a set of 13 new search queries on the ESI collected from the custodians, each of which includes the phrases "TCC" and "Target Check Card." Plaintiff contends that the documents produced in response to this new ESI search would be responsive to several of Plaintiff's Requests for Production, including Request No. 26 ("Produce all Documents pertaining to the decision to name the Target Debit Card a 'debit card,' including consumer research and third-party consultant advice").

Target has offered to run the additional search terms (with slight modifications) on the ESI already collected from the five custodians agreed to by the parties. Target has refused to collect ESI from new custodians on the grounds that Plaintiff's request

for additional ESI is barred by the parties' ESI protocol, seeks duplicative and cumulative discovery, seeks irrelevant discovery, and puts an undue burden on Target.

### B. Target 30(b)(6) Deposition Dispute

Plaintiff contends that at Target's July 19, 2018, 30(b)(6) deposition, Target's designated witnesses were unprepared to testify regarding the following topics, or specific questions, that he believes were encompassed by noticed topics:[1]

- Topic 3 ("Consumer complaints regarding the processing time for transactions made with the Target Debit Card")
    - Whether consumers have made complaints during the Class Period regarding the processing of TDC transactions (Ashraf Dep. at 14-15.)
    - Where and how consumer complaints are stored (Ashraf Dep. at 17.)
- Topic 6 ("The decision to name the Target Debit Card a 'debit card'")
    - Plaintiff contends the employee designated to testify about this Topic was unprepared and uninformed on this topic, and admitted that other Target employees had more knowledge than she did about the name change and the reasons for the name change. (Shekta Dep. at 16-23.)
- Topics 8 ("The process by which consumers sign up for the Target Debit Card") and 10 ("Practices and procedures related to Target employees encouraging consumers to sign up for and use the Target Debit Card"):
    - Whether there is any sort of review or testing done for new employees to make sure they understand the Target Debit Card ("TDC") (Shetka Dep. at 33)
- Topics 11 ("The manner in which Target Debit Card transactions are processed") and 13 ("The reason(s) Target Debit Card transactions are not processed immediately"):

---

[1] The cited testimony is attached as exhibits to the parties' Memorandum of Points and Authorities as follows: Exhibit A (Deposition of Ali Ashraf), Exhibit B (Deposition of Heather Shetka), and Exhibit C (Deposition of Kristy Cook).

- o Why TDC transactions are sent on a particular time table to Target's bank for processing (*see* Cook Dep. at 14-16);
- o Why Target's vendor uses a particular type of batch processing to process TDC transactions (*id*. at 21);
- o Details of Target's contract negotiations with its vendor regarding ACH processing (*id*. at 22-25);
- o Who at Target was involved in the decision to process TDC transactions on the ACH network (*id*. at 40);
- o Whether Target's processing practices for the TDC changed between 2007 and 2012 (*id*. at 29);
- o Whether Target could require its bank to process TDC transactions more quickly into the ACH system (*id*. at 51-52);
- o What is listed in the merchant field for TDC transactions (*id*. at 64-65);
- o Whether there are losses associated with the TDC for Target (*id*. at 70);
- o What were the "improvements" made by Target's bank mentioned by a former Target employee in an email (*id*. at 98, 103-104); and
- o The amount of the fee Target pays to its bank for ACH processing (*id*. at 117).
- Topics 14 ("Defendant's policies and procedures relating to assessing RPFs") and 15 ("The manner in which Defendant determines when and whether to assess RPFs"):
  - o What is the purpose of the Returned Payment Fee charged by Target (*see* Cook Dep. at 69); and
  - o Why were Returned Payment Fees set at particular amounts (*Id*.)

Plaintiff contends that he is entitled to testimony on these properly-noticed deposition topics, all of which are highly relevant to Plaintiff's claims in this case.

Target contends that most of the questions on which Plaintiff seeks additional testimony were outside the scope of the noticed topics, prohibited by the parties'

agreement to limit certain of the topics, or sufficiently answered by the witnesses. Target further contends that its witnesses were adequately prepared for their noticed topics. Target has, nonetheless, offered to provide alternatives to further testimony as to several of the questions, including: who at Target was involved in the decision to process TDC transactions on the ACH network, whether there is any sort of review or testing done for new employees to make sure they understand the TDC, what is listed in the merchant field for TDC transactions, and the amount of the fee Target pays to its bank for ACH processing.

## II. A Statement by Plaintiff as To Why a Further Response Should be Compelled

Target should be compelled to conduct an additional ESI search because the agreed upon search terms and document custodians did not include the phrase "Target Check Card" or related terms, or custodians who likely had a role in the name change. The failure to include such search terms or custodians was not Plaintiff's fault because he had no way of knowing about this name change before a single document was produced in discovery alerting Plaintiff to the name change. Subsequent ESI searches using additional terms and custodians was explicitly contemplated by the Stipulated ESI Discovery Protocol ("ESI Protocol") in the event that first round search terms are determined to be inadequate. (Dkt. 64.) However, Defendant refuses to do so. Target should be compelled to meet-and-confer in good faith on additional search terms and custodians on this key issue that is only an issue at this point because Target was not forthcoming with the rebranding at the outset of this case.

Additionally, Target clearly did not designate a witness adequately prepared or educated to testify on several of the noticed topics, including the rebranding of the TCC to the TDC and details of the processing of TDC transactions. With respect to the name change, the designated witness, Ms. Shetka, stated that the entirety of her preparation for the deposition was a fifteen-minute conversation with an in-house

attorney, a conversation the witness sarcastically referred to as "long"; that much of the conversation centered around former Target employees, not the name change or reasons for the name change; and that it is certain the employee she spoke to had more knowledge than she did:

> Q. Okay. And do you know who was involved in the decision in 2010 to change the name of the Target Check 2 Card?
> A. I do not know.
> Q. If you ask Ms. Watnemo would she know?
> […]
> A. I'm sure she would know, yeah.
> […]
> Q. How long was your conversation with Ms. Watnemo regarding renaming the Target Check Card?
> A. Kristin and I probably had about a 15-minute conversation.
> Q. So other than what you've told me, which is 18 about 20 seconds of testimony, what else do you remember from your 15-minute conversation regarding the renaming of the Target Check Card?
> A. Yeah, so Kristin and I had a long conversation, 15 whole minutes around the naming of the Target Debit Card and a lot of the conversation was based on the fact that there are not a lot of people left at Target who were involved in that decision-making process. There wasn't any documentation that we could refer back to that she could share with me that would educate me.
> […]
> Q. So you mentioned that there are not a lot of people remaining from that 2010 period when you renamed the card. Are there any besides Ms. Watnemo?
> A. I'm sure there are people who are still employed at Target who worked there in 2010, but I don't know if any of those people were involved in the naming discussion, I don't know who was involved in the naming discussion, so I won't be able to answer that question for you.
> Q. […] Did you ask her about that, whether she knew there were current employees involved in that decision in 2010?
> A. I don't think I outright asked her, but we did kind of have that conversation around people no longer being employed.

(Shetka Dep. at 16-19.)

Ms. Shetka reviewed no documents and made no efforts to discuss the rebranding with any of the few employees involved in the decision-making process who are still at Target, nor did she attempt to reach out to former employees to educate herself. (Shetka Dept. at 17-19.)

And while Ms. Shetka testified that Target believed the term "Target Debit Card" would "resonate" better with consumers, she did not know how or why Target came to that understanding, or whether it performed consumer research in order to arrive at that understanding:

> Q. But when you use the term resonate, that the name Target Debit Card resonated more than the name Target Check Card with certain consumers, how and why did it resonate more?
> […]
> A. It's a name that people are familiar with.
> [….]
> Q. Okay. And in order to form that understanding did Target perform research, any sort of surveys –
> A. Unfortunately, yeah, we talked about that.
> Q. Survey any other consumers regarding the name of the card?
> A. I don't know.

(Shetka Dep. at 22-23.)

With respect to the other noticed topics (discussed above), the lack of preparation is evident from the transcript itself. Because these topics were properly noticed and highly relevant to Plaintiff's case, Target should be compelled to produce witnesses properly educated on each.

**III.　A Precise Statement by Defendant as to the Basis for Objections**

　　**A.　Plaintiff's Request for Additional ESI Should Be Denied.**

First, Plaintiff's demand is at odds with the explicit terms of the Stipulated Order Regarding Discovery of Electronically Stored Information ("ESI Protocol") entered by the Court. In the ESI Protocol the parties explicitly agreed to limit ESI in this case to five custodians. Using agreed-upon search terms, Target searched the ESI of the five selected custodians. When Plaintiff raised the current issue, Target

offered to run Plaintiff's "new" search terms on the collected ESI, but the offer was rejected. Plaintiff has not identified any additional custodians, and Target has informed Plaintiff that, given the passage of time, it has been unable to locate any current employees that, per his request, had "primary responsibility" for the name change of the Target Check Card in 2010, and whose ESI it can search.

Second, Target has already engaged in both ESI and non-ESI searches for discovery responsive to Plaintiff's document request seeking all documents pertaining to the decision to name the Target Debit Card ("TDC") a "debit card"; Plaintiff's request for additional ESI on this issue therefore seeks duplicative and cumulative discovery. The fact that Target has few documents on this issue to date in unsurprising given that the decision was made in 2010, outside any reasonable retention period.

Third, the information that Plaintiff seeks does not even meet the threshold test of relevance in that it is not relevant to the claim or defense of any party. *See* Fed. R. Civ. Pro. 26(b)(1). The fact that Target in 2010 changed the name of the product at issue is not relevant to any element of Plaintiff's remaining claims for breach of the implied covenant, or under California's statutes. In particular, Plaintiff does not explain how searching for the phrases "Target Check Card" or "TCC" will result in new discovery related to Plaintiff's claims regarding the *TDC*.

Finally, Plaintiff's demand is unduly burdensome given that he seeks duplicative and cumulative discovery. To date, Target has already reviewed over 40,000 documents and spent over $100,000 to complete ESI-based discovery.

### B. Plaintiff's Request for Further 30(b)(6) Testimony Should Likewise Be Denied.

In response to Plaintiff's requests, Target has worked diligently to provide Plaintiff with the appropriate discovery he needs to litigate his claims in this case, including agreeing to the *second* 30(b)(6) deposition (which lasted 12 hours) that is at issue in this motion. *See* Fed. R. Civ. Pro. 30(a)(2)(A)(ii) (leave of court required to

take second deposition of deponent already deposed in case). Target designated three witnesses to testify to the twenty topics noticed by Plaintiff. The parties met and conferred beforehand to narrow the scope of the broad topics. There is no reason to compel further testimony from Target on any of the topics.

First, Target's witnesses had no obligation to be prepared to answer the majority of questions about which Plaintiff complains because the questions were outside the scope of the noticed topics, or were not within the scope of a topic for which the questioned witnesses were designated to testify. Second, Plaintiff's objections to the witnesses' general testimony in response to questions within the scope of Topics 3 and 6 are without merit because the witnesses provided sufficient responses to Plaintiff's questions. Third, Target's witnesses were adequately prepared to testify as to their designated topics. A 30(b)(6) witness's inability to answer every question is alone insufficient to establish a lack of preparedness.

For these reasons, Plaintiff's motion to compel should be denied.

DATED: August 17, 2018                    Respectfully submitted,

By:   */s/ Jeffrey Kaliel*
JEFFREY D. KALIEL, California Bar No. 238293
jkaliel@kalielpllc.com
SOPHIA GOREN GOLD, California Bar No. 307971
sgold@kalielpllc.com
**KALIEL PLLC**
1875 Connecticut Ave., 10th Floor
Washington, DC 20009
Telephone (202) 350-4783

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
JEFF OSTROW, Florida Bar No. 121452
ostrow@kolawyers.com
One West Las Olas, 5th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100

Facsimile: (954) 525-4300
(*pro hac vice*)

**Counsel for Plaintiff**

/s/ James McGuire
**James R. McGuire**
Morrison and Foerster
425 Market Street
San Francisco, CA 94105-2675
(415) 268-6009
Email: JMcguire@mofo.com

**Counsel for Defendant Target Corp**