JEFFREY KALIEL (SBN 238293)
SOPHIA GOREN GOLD (SBN 307971)
**KALIEL PLLC**
1875 Connecticut Ave. NW, 10th Floor
Washington, DC  20009
Phone: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

JEFFREY OSTROW (admitted *pro hac vice*)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd, 5th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
*ostrow@kolawyers.com*

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WALTERS, *on Behalf of Himself and Those Similarly Situated* | CASE NO. 3:16-CV-01678-l-MDD |
| Plaintiffs, | |
| vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE** |
| TARGET CORP., | |
| Defendant. | |

I.  **Plaintiff's Points and Authorities in Support of Motion to Compel**

One of the central allegations in this litigation is that the name "Target Debit Card" is misleading to reasonable consumers because transactions undertaken with that card are not processed like virtually every other "debit card" in country, the latter which feature immediate processing in the form of immediate authorize or decline decisions based on available funds in consumer accounts.  This discovery dispute concerns two issues that directly relate to these central questions:  **First**, Target's refusal to search for documents, and provide witness testimony, on an important fact that Plaintiff has learned late in discovery:  that the Target Debit Card ("TDC") was formerly named the *Target Check Card* ("TCC"), and that Target changed the name in 2010. Yet Plaintiff has received not one document that explains the reason or justification for the name change, and has received extremely limited testimony regarding the same.  **Second**, in a recent Rule 30(b)(6) deposition, Target witnesses were unprepared to answer numerous questions regarding the processing of Target Debit Card transactions and the naming of the Target Debit Card.

Plaintiff requests that Target be required to search for and produce documents related to the Target Check Card name change and produce a Rule 30(b)(6) witness adequately prepared to answer questions regarding the noticed topics.

**A. Target Should Be Required to Use Additional ESI Search Terms Including "TCC" on Custodians Involved in the Name Change**

Since TDC transactions are <u>not</u> processed like other debit card transactions, and since TDC transactions are in some ways like a check (i.e., they take days to result in a deduction from a consumer's bank account, and they do not operate on the networks all other debit cards operate on), it appears Target changed from a less deceptive product name to a more deceptive product name.  Plaintiff is entitled to explore the reasons for this decision, including consumer perception research Target performed, the decision-making process, other names considered, what Target intended consumers understand from the name TDC, and why Target believe the name TDC would better express the reality of the product to consumer.  But Target to

date has produced just <u>one</u> document regarding the name change—and even then, the document only mentions the name change in passing.

As Target's Rule 30(b)(6) witness has already explained, the decision to change the name of the Target Check Card was a major decision by Target and was not undertaken lightly or without significant analysis:

> I know that when we launch new products, promotions, services we do a lot of research and that's our general best practice. I would assume that probably happened at the time, but there's nothing that I can refer back to that shows me that.

(Shetka Dep. at 16:12-17) For these reasons, Plaintiff requested that Defendant run additional searches for ESI using new search terms and document custodians related to the Target Check Card, as explicitly contemplated by the Stipulated ESI Discovery Protocol ("ESI Protocol") in the event that first round search terms are determined to be inadequate. (Dkt. 64.) However, Defendant refuses to do so.

Plaintiff has received one document, total, that references that name change from the TCC to the TDC. Target takes the position that Plaintiff is out of luck and anything not discovered in the first round of ESI search is forever off limits. However, the ESI Protocol expressly contemplates this scenario, when information learned in discovery necessitates further ESI searching, stating: "If, after the receipt of a production, the receiving party reasonably believes that the search did not yield the information sought, and supplies additional terms that would reasonably lead to the information sought, the Parties shall meet and confer regarding requests to utilize additional search terms." *Id*.

Rather than considering additional search terms in good faith, Target is hiding behind the expense of an additional round of ESI searching and production to avoid meeting its discovery obligations. However, had Target simply disclosed the name change while the parties were negotiating ESI search terms and custodians, this ESI search would have been completed in the first round without the additional expense.

Thus, the additional expense that Target uses to rationalize its refusal to conduct a subsequent ESI search is of its own making. Using a party's term of art as search terms in an ESI search is reasonably calculated to capture additional information relevant to the parties' dispute and is grounds to compel a subsequent ESI search. *Swanson v. Alza Corp.*, No. CV 12-04579-PJH (KAW), 2013 U.S. Dist. LEXIS 145493, at *12-14 (N.D. Cal. Oct. 7, 2013). Because "Target Check Card" is a term of art that is highly relevant to this case and the customer confusion caused by the decision to rebrand the card as a "debit card," it is highly relevant to this case, and Target should be required to run additional an additional ESI search for terms including "Target Check Card" and other terms as negotiated between the parties, as well as custodians involved in the rebranding process.

**B. Target Should be Compelled to Produce 30(b)(6) Witnesses Adequately Prepared to Testify Regarding the Noticed Topics**

The failure to produce an educated witness for a Rule 30(b)(6) deposition warrants an order compelling the party to produce a properly educated witness to sit for a continued deposition. *See LF Centennial Ltd. v. Z-Line Designs, Inc.*, No. 16CV929 JM (NLS), 2017 WL 2414791, at *6 (S.D. Cal. May 31, 2017); *S. Cal. Stroke Rehab. Assocs. v. Nautilus*, No. 09-CV-744 JLS (AJB), 2010 U.S. Dist. LEXIS 76508, at *3 (S.D. Cal. July 29, 2010); *Starline Windows Inc. v. Quanex Bldg. Prod. Corp.,* No. 15-CV-1282-L (WVG), 2016 WL 4485564, at *4 (S.D. Cal. July 21, 2016).[1]

---

[1] *See also Tiki Shark Art Inc. v. CafePress Inc.*, No. CV 13-00577 JMS-RLP, 2014 WL 12603135, at *2 (D. Haw. June 30, 2014), *aff'd*, No. CIV. 13-00577 JMS, 2014 WL 3928799 (D. Haw. Aug. 12, 2014) (ordering a second deposition of the 30(b)(6) designee when the witness was inadequately prepared to answer questions relating to the noticed topics the first time); *Huviron Co. v. CCTVSTAR, Inc.,* No. SACV1401009DOCDFMX, 2015 WL 12830387, at *3 (C.D. Cal. Sept. 16, 2015) (ordering a further 30(b)(6) deposition with respect to certain topics original designee was unprepared to testify about); *Great Am. Ins. Co. of New York v. Vegas Const. Co.,* 251 F.R.D. 534, 540 (D. Nev. 2008) (ordering sanctions when 30(b)(6) designee was inadequately prepared to testify on noticed topics).

Here, the 30(b)(6) witnesses were inadequately prepared to testify on several of the noticed topics, as discussed *supra*. With regard to the name change, for example, the witness spoke to one Target employee, for 15 minutes, and spent much of the time discussing the reasons why it would be difficult to adequately prepare.[2] Plaintiff contends that the rebranding from the TCC to the TDC was a crucial, major development that supports its UCL and CLRA claims in that that the use of the words "debit card" actively mislead consumers to believe that the TDC functioned like a debit card, rather than in some respects like a check. This is a crucial topic and Target must be compelled to provide testimony on it.

Additionally, Target's witnesses were unprepared to discuss several other topics relevant to the processing of the card, the reason for and level of the RPF, consumer complaints, employee training on the card, and the sign-up process. These topics, too, are important to developing Plaintiff's case. Because Plaintiff's case centers around Target improperly building delay into the processing of TDC transactions, Plaintiff is entitled to develop a full factual record regarding the processing of the TDC. Likewise, Plaintiff is entitled to testimony regarding the reason for and the level of the RPF, including whether the fee served any purpose other than revenue generation. And issues like the sign-up process, employee training, and consumer complaints help shed light on whether Target employees intentionally and deceptively tout the card and omit material facts pertaining to how the card is processed. Plaintiff is entitled to discovery on each of these topics, all which were properly noticed. (*See* Mot. at 2-3.)

---

[2] It does not matter that most of the employees who worked for Target during the rebranding are no longer employed with Target. "The designee may become educated by reasonably obtaining information from documents, past employees, or other sources." *Kelly v. Provident Life & Accident Ins. Co.*, No. 04cv807-AJB (BGS), 2011 U.S. Dist. LEXIS 66066, at *8 (S.D. Cal. June 20, 2011).

Because the witnesses were so woefully unprepared to discuss the full scope of the noticed topics, this Court should enter an order compelling Target to sit for a continued deposition and produce a witness properly educated on these topics, taking all reasonable steps to educate them including, but not limited to reviewing documents, seeking out other employees who may have knowledge on the topics, and failing that, seeking out former employees and requesting their assistance in educating the witnesses to testify. The Court should also require Target to pay Plaintiff's costs and expenses for this continued deposition pursuant to Rule 37(d)(3).

### C. The Court should Hold Discovery Deadlines in Abeyance until Resolution of this Dispute

Fact discovery in this matter is scheduled to end on September 12, 2018. Because Plaintiff cannot complete discovery until he is allowed to receive the information and documents discussed herein—or until the Court determines that Plaintiff is not entitled to the information and documents discussed herein—Plaintiff respectfully requests that the end of fact discovery be delayed until such time as a decision on this Joint Motion is entered.

## II. Defendant's Points and Authorities in Opposition to Motion to Compel
### A. Plaintiff's Request for Additional ESI Violates the ESI Protocol and Rule 26's Limitations.

Plaintiff bases his request for additional ESI on a mischaracterization of the ESI Protocol negotiated by the parties and entered by the Court. (Decl. of James R. McGuire ("McGuire Decl.") Ex. A.) Plaintiff claims that "[s]ubsequent ESI searches using additional terms and custodians was explicitly contemplated by the" ESI Protocol. To the contrary, the ESI Protocol specifically protects Target from the obligation to collect and process additional ESI from *new custodians*. (*Id.* at 3 (parties agreed "to *limit* the number of custodians selected for each party to 5 custodians") [emphasis added].) Target agrees that the ESI Protocol contemplates that the parties may meet and confer regarding additional search terms and, in fact,

agreed to run Plaintiff's additional searches against the ESI it collected from the five agreed-to custodians. (McGuire Decl. ¶ 2.) Plaintiff rejected this proposal. (*Id.*)

Plaintiff's complaint that his need for additional ESI is due to Target's failure to identify the term "Target Check Card" is not well taken. First, Plaintiff did not need to know that term to conduct discovery on the issue of whether the name of the *TDC* is deceptive. And Plaintiff has in fact conducted such discovery. (*See infra.*) Second, even assuming the term alone would lead to relevant discovery (it would not), by the time the parties agreed to custodians and search terms on May 3, 2018, Plaintiff had had ample opportunity to conduct initial discovery, including an initial set of interrogatories and a 30(b)(6) deposition of Target, to ensure that it selected custodians and key terms intended to target relevant discovery. Basic due diligence by Plaintiff of information in the public domain would also have uncovered the term "Target Check Card."[3] In any event, Target had no obligation to volunteer discovery to Plaintiff, particularly as to a term that is entirely irrelevant to Plaintiff's claims.

Even if Plaintiff's request for additional ESI were not barred by the ESI Protocol, it exceeds the scope of permissible discovery under Federal Rule of Civil Procedure 26.[4] Plaintiff claims he needs the additional ESI to "explore the reasons" for changing the name of the TDC. In the first round of ESI, however, Target used Plaintiff's broad search terms to look for documents responsive to Request for Production No. 26, which seeks "all documents pertaining to the decision to name the

---

[3] *See, e.g.*, TARGET CORPORATION, WIKIPEDIA, https://en.wikipedia.org/wiki/Target_Corporation ("Target launched its PIN-x debit card, the Target Check Card, which was later re-branded the Target Debit Card"); TARGET CORPORATION ANNUAL REPORT 2007, TARGET CORPORATION, at 13, http://media.corporateir.net/media_files/irol/65/65828/reports/Target07AR_FINAL_OnlineVersion. pdf (explaining that in 2007 Target introduced the Target Check Card, described as "a Target-branded debit-based financial product).

[4] Rule 26 requires the Court to limit discovery where "the discovery sought is unreasonably cumulative or duplicative," "the party seeking discovery has had ample opportunity to obtain the information," or the burden of the discovery outweighs its benefit. Fed. R. Civ. Pro. 26(b)(1); *id.* (b)(2)(C)(i)-(iii).

Target Debit Card a 'debit card.'" Plaintiff does not explain how the proposed ESI, which seeks documents containing the phrases "Target Check Card" or "TCC," will reveal any additional discovery that was not located by Target's prior efforts. *See Unilin Beheer B.V. v. NSL Trading Corp.*, No. CV 14-2210 BRO (SSx), 2015 WL 12659919, at *4 (C.D. Cal. Mar. 27, 2015) (plaintiff's "mere suspicion" that documents exist insufficient basis to grant motion to compel).

Plaintiff also fails to establish that its request for additional ESI will lead to *relevant* discovery. *See Womack v. Metro. Transit Sys.*, No. 09CV2679 BTM (NLS), 2010 WL 3911475, at *1 (S.D. Cal. Oct. 4, 2010). Plaintiff mumbles that using a "term of art" as a search term leads to relevant discovery, but Plaintiff is not challenging the phrase "Target Check Card," and the fact that Target changed the name of the product is not relevant to Plaintiff's claims. He never explains why discovery related to the decision to name the TDC a "debit card" would include the phrase "check card," but not "debit card," for which Target already searched.

Given that Plaintiff's requested additional ESI seeks discovery that is duplicative and cumulative of the discovery for which Target already searched, it would also be unduly burdensome for Target to search for it again. *See Swanson v. Alza Corp.*, Case No. CV 12–04579–PJH (KAW), 2013 WL 5538908, at *6 (N.D. Cal Oct. 7, 2013) (undue burden to require defendant to run additional search terms that would result in duplicative documents). To meet Plaintiff's demands for ESI to date, Target reviewed over 40,000 documents and spent over $100,000. (McGuire Decl. ¶ 3.) Plaintiff's demand that Target pay for additional ESI discovery that is unlikely to result in new, relevant discovery should be rejected.

### B.     No Further 30(b)(6) Testimony Is Required.

Plaintiff's claim that Target's witnesses were inadequately prepared ignores the parties' agreement, the designees' actual testimony, the proper scope of 30(b)(6) preparations, and the witnesses' preparation. Target addresses each witness in turn.

Plaintiff's assertion that Ms. Cook was inadequately prepared to testify as to Topics 12 and 13 because she could not answer every question Plaintiff asked is insufficient to compel further testimony. First, Ms. Cook had no obligation to prepare answers to the questions identified by Plaintiff, which are outside the scope of Topics 12 and 13. For example, Plaintiff's questions regarding who at Target was involved in the decision to use the ACH network, details surrounding contract negotiations between Target and its vendor, financial savings to Target in operating its own debit card, and the specific fees Target pays its vendors, are not fairly encompassed within Topics 12 and 13 because they do not seek facts regarding *how* TDC transactions are processed or *why* Target Debit Cards are not "processed immediately."[5] In such a case, where "the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem." *ChriMar Sys. Inc. v. Cisco Sys. Inc.*, 312 F.R.D. 560, 563 (N.D. Cal. 2016); *see United States v. Celgene Corp.*, No. CV 10-3165 GHK (SS), 2015 WL 9661172, at *3 (C.D. Cal. Oct. 16, 2015) (declining to compel 30(b)(6) testimony beyond the scope of the noticed topics).

Second, Ms. Cook's lack of knowledge in response to particular questions "does not by itself establish inadequate preparation under Rule 30." *Estate of Goldberg v. Goss-Jewett Co., Inc.*, No. ED CV 14-01872 DSF (AFMx), 2016 WL 7471427, at *2 (C.D. Cal. Feb. 19, 2016). A 30(b)(6) witness is adequately prepared where she has become educated on the requested knowledge to the extent reasonably available. Fed. R. Civ. Pro. 30(b)(6). Ms. Cook spent 55-60 hours meeting with counsel, speaking with 12 individuals on different Target teams, and reviewing documents. (Decl. of Kristen Cook ¶¶ 3-5.) This is more than adequate preparation,

---

[5] Plaintiff's complaint that Ms. Cook could not answer whether Target changed how it processes TDC transactions between 2007 and 2012 is not well taken given that the parties agreed that Ms. Cook would be prepared to discuss processing from June 2012 to present. (McGuire Decl. Ex. B).

and Plaintiff cites no authority to the contrary. *See Estate of Goldberg*, 2016 WL 7471427, at *2.

Plaintiff's contention that Ms. Cook was unprepared for Topics 14 and 15 because she did not know why Target charges RPFs and the reason RPFs are set at specific levels fails for the same two reasons just discussed. In any event, Plaintiff does not contend that Target could not charge such fees under the TDC agreement or that the fees are too high and therefore such information is irrelevant.

Plaintiff's claim that Ms. Shetka was inadequately prepared to testify regarding Topic No. 6 mischaracterizes Ms. Shetka's testimony and her preparation. Plaintiff in fact identified only a *single* tangential question regarding the identity of Target employees involved in the decision to name the TDC a "debit card" that Ms. Shetka could not answer. Ms. Shetka explained that she could not say for certain whether Target completed consumer research to reach that decision because *Target* has been unable to locate any, and otherwise answered Plaintiff's questions regarding Target's naming decision. (*See* Ex. B at 15:17-23:25.) In any event, Plaintiff's claim that Ms. Shetka's sole preparation was a 15-minute conversation with a Target attorney is made up. In fact, Plaintiff *never asked Ms. Shetka what she did to prepare.* Not only did Ms. Shetka speak with a Target lawyer involved in the rebranding of the TDC, but she also spent 40-50 hours preparing with counsel, reviewing documents, and speaking with five other Target employees. (Decl. of Heather Shetka ¶¶ 3-4.) Ms. Shetka was prepared.[6]

Finally, Plaintiff complains that Mr. Ashraf's testimony was inadequate as to Topic 3 regarding consumer complaints on processing times for the TDC, but fails to

---

[6] The other question identified by Plaintiff does not establish that Ms. Shetka was unprepared. As to training, Ms. Shetka testified extensively regarding the training provided to Target team members on the TDC, and only did not know whether they are tested on it. Target offered to provide this information to Plaintiff in an interrogatory response.

identify any relevant questions Mr. Ashraf failed to answer.  Mr. Ashraf explained that Target began formally tracking complaints regarding the TDC in a central depository within the last year, but had been aware of complaints prior to that time. (Ex. A at 11:18-23, 13:7-24.)  He was also prepared to provide additional details regarding Target's knowledge of complaints before that time, but Plaintiff did not pursue that line of inquiry.  (Decl. of Ali Ashraf ("Ashraf Decl.") ¶ 4.)  Also, Mr. Ashraf was adequately prepared.  He spent an estimated 20 hours meeting with counsel, speaking with Target employees, and reviewing documents.  (*Id.* ¶¶ 2-3.)

### C. Sanctions and an Extension Are Unwarranted.

Plaintiff's request for sanctions for the continued deposition of Target and a stay of the discovery deadlines are both unwarranted.  As to sanctions under Rule 37(d)(3), Plaintiff's request is unfounded given the extensive preparation of Target's witnesses.  As to Plaintiff's request to extend the discovery deadline, he has not established good cause and due diligence for an extension of *all* fact discovery as required by Rule 16(b)(4), because the discovery cutoff is yet a month away and the late date of this discovery dispute is due to Plaintiff's own delay.

# DECLARATION OF COMPLIANCE WITH MEET AND CONFER OBLIGATIONS

The parties hereby attest that they met and conferred in compliance with the Court's requirements prior to filing this Joint Motion.

DATED: August 17, 2018         Respectfully submitted,

By:   */s/ Jeff Kaliel*

JEFFREY KALIEL (SBN 238293)
SOPHIA GOREN GOLD (SBN 307971)
**KALIEL PLLC**
1875 Connecticut Ave. NW, 10th Floor
Washington, DC  20009
Phone: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

**Counsel for Plaintiff**

/s/ James McGuire
**James R. McGuire**
Morrison and Foerster
425 Market Street
San Francisco, CA 94105-2675
(415) 268-6009
Email: JMcguire@mofo.com

**Counsel for Defendant Target Corp**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2018, the foregoing document was served on all ECF-registered counsel of record via CM/ECF.

/s/ Jeffrey Kaliel
Jeffrey Kaliel