# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WALTERS, on behalf of himself and all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>TARGET CORP.,<br><br>         Defendant. | Case No.: 3:16-cv-1678-L-MDD<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS [Doc. 155]** |

  Pending before the Court is the Plaintiffs James Walters' and the proposed class members' (together "Plaintiffs") unopposed motion for preliminary approval of class action settlement [ECF No. 155]. In the instant motion, Plaintiffs request the Court pursuant to Federal Rule of Civil Procedure 23 to do the following: (1) grant preliminary approval of the settlement, (2) certify the class for settlement purposes, (3) appoint James Walters as class representative, (4) approve the notice program as contemplated in the settlement agreement ("Agreement") and approve the form and content of the settlement notices, (5) approve and order the opt-out and objection procedures set forth in the

1

Agreement, (6) stay the California Action[1] pending final approval, (7) appoint Class Counsel as listed in the Agreement[2], and (8) schedule a final approval hearing. Upon consideration of the instant motion, the Court hereby **GRANTS** Plaintiffs' motion as follows.

## I. Background

On June 29, 2016, Plaintiff Walters filed the California action against Target seeking monetary damages, restitution, and injunctive relief for Target's alleged breach of the Target Debit Card ("TDC") Agreement ("TDC" Agreement") and California law. *See* Doc. 1. On August 15, 2016, Plaintiff Walters filed a First Amended Complaint ("FAC") asserting the following causes of action: (1) breach of contract, including the implied covenant of good faith and fair dealing; (2) unjust enrichment; (3) unconscionability; (4) conversion; (5) violation of the "unfair" prong of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (6) violation of the "fraudulent prong of the UCL; (7) violation of the "unlawful" prong of the UCL; and (8) violation of the Consumer Legal Remedies Act "(CLRA"), Cal. Civ. Code §§ 1750 *et seq*. *See* Doc. 3. Between September 14, 2016 and March 8, 2018, the parties engaged in motion practice from which Plaintiff's FAC claims were limited, and Target eventually filed its Amended Answer to the FAC. *See* Docs. 13, 29, 32, 33, 59. Subsequently, the parties engaged in fact discovery, depositions, and exchanged expert reports. *See* Doc. 155-3 at 4. After the

---

[1] The California Action encompasses the putative action filed by Plaintiff Walters against Defendant Target Corporation ("Target"), on June 29, 2016, claiming the Target Debit Card ("TDC") is deceptively marketed. *See* Doc. 155-2 at 2. On September 12, 2018, Plaintiffs Dixon and Powell ("the Minnesota plaintiffs") filed a similar action against Target in Minnesota ("the Minnesota Action"). *Id.* at 3. On January 22, 2019, the Minnesota plaintiffs filed a first amended complaint against Target, alleging similar conduct as alleged in the California action and adding Plaintiff Polcare as another named plaintiff. *Id.* All parties have agreed that the pending settlement serves as full settlement of both the California and Minnesota actions, subject to final approval. *See* Doc. 155-2 at 2.

[2] In the memorandum in support of the instant motion, Plaintiffs request the Court "appoint as Class Counsel the law firms listed in Section 1.7 of the Agreement[.]" Doc. 155-1 at 32. However, Class Counsel is listed in Section 1.5 of the Settlement Agreement's ("Settlement"). Doc. 155-2 at 4. The Court finds that this is merely a editorial oversight and appointment of Class Counsel shall be discussed herein.

close of discovery, Target filed a motion for summary judgment, and Plaintiff filed a motion for class certification.[3] Docs. 90, 98.

On September 12, 2018, Plaintiffs Powell and Dixon commenced the Minnesota Action.

In both actions, Plaintiffs allege that Target "omits and misrepresents the risks of using the TDC," resulting in cardholders suffering significant fee penalties when the checking account linked to their TDC has insufficient funds. Doc. 155-1 at 9. Plaintiffs further allege that the TDC card agreements fail to properly describe how the TDC operates on a slower Automated Clearinghouse Network ("ACH Network"), unlike other debit card networks, causing customers to incur fees for insufficient funds as the TDC does not transmit requests to consumers' banks for days after a purchase. *Id.*

On March 14, 2019, the Parties mediated both actions in Los Angeles, California. *See* Doc. 155-3 at 5. Although the Parties did not settle that day, the progress made during mediation laid the foundation to facilitate the Parties reaching settlement after several weeks of negotiation. *See id.* On April 29, 2019, the parties filed a Notice of Settlement and signed the Settlement on June 18, 2019. *See* Docs. 155-2 at 22-25; 155-3 at 5.

**II. Settlement**

Plaintiff proposes the Settlement class be an opt-out class under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure with the following definition:

> All TDC holders in the United States who, within the Class Period, incurred at least one [Returned Payment Fee ("RPF")] RPF in connection with their TDC, that was not refunded or waived.

Doc. 155-2 at 6. The Settlement defines the Class Period as the period between June 29, 2012 and the date this order is filed. *Id.* at 4.

The Settlement has a total cash value of $8,222,330, consisting of the Cash Settlement Amount of $5,000,000 payable by Target to establish the Settlement Fund and

---

[3] Upon the filing of the instant motion, the Court denied as moot both motions. *See* Doc. 156.

the Debt Reduction Cash Amount of $3,222,330. *See* Docs. 155-1 at 12; 155-2 at 4. The Cash Settlement is earmarked to pay: (1) Settlement Class Member Cash Payments; (2) any Court awarded attorneys' fees and litigation costs; (c) any Court awarded Class Representative Service Awards; and any Administrative Costs. *See* Doc. 155-2. Settlement class members will not have to submit claims to receive benefits under the Settlement. Doc. 155-1 at 12. Instead, the Settlement Administrator will automatically distribute Settlement Class Member Cash Payments[4] and Debt Reduction Cash Amounts[5] to the Settlement Class. *Ibid.* To the extent any funds remain in the Settlement Fund Account after the distributions, those funds will: "(a) be distributed to Settlement Class Members who cashed their checks via a secondary distribution, if economically feasible; or (b) through a residual *cy pres* program benefitting the National Endowment for Financial Education." Doc. 155-1 at 13; *see* doc. 155-2 at 15. Under no circumstance will the funds revert to Target, except where the Settlement is terminated according to its terms. *Id.*

The Settlement Agreement also provides three forms of non-monetary relief. First, "Target agrees not to implement or assess RFP [*sic*] or any equivalent fee, in connection with TDC transactions that are less than $7.00, for a period of two years[.]" *See* Doc. 155-2 at 7. Second, "Target agrees that any RFP [*sic*] charged will be the lesser of the RFP [*sic*] as disclosed by the TDC Agreement or the amount of the TDC transaction that was returned unpaid, for a period of two years[.]" *Ibid.* Third, the Parties will collaborate until final approval of the Settlement to inform TDC holders about how use of the TDC could cause RPFs due to non-sufficient funds or overdraft fees from the customer's banking institution(s). *Ibid*.

---

[4] "[T]he Net Settlement Fund will be divided by the number of Settlement Class Members who paid at least one RPF that was not refunded or waived." Doc. 155-1 at 12.

[5] "The Debt Reduction Cash Amount shall be used by Target to make Debt Reduction Payments toward the outstanding balance on the Settlement Class Member's TDC account in an amount of 25% of the first RPF that was assessed not paid. Doc. 155-1 at 12.

### III. Legal Standard

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The Court first weighs whether the proposed class meets the certification requirements and next whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *Id.* Rule 23(a) provides the four perquisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), a class action can exist if "the court finds the questions of and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A class action can also be maintained under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Additionally, the proposed settlement must be fair, consistent with counsel's fiduciary obligations to the class, and not the product of collusion, even if the proposed terms are not ideal. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). A court must balance the following factors in evaluating a proposed settlement:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Id.* at 1026 (citations omitted).

///

///

///

///

## IV. Discussion

### A. Class Certification

When evaluating a class action settlement, courts must pay "undiluted, even heightened attention" to the class certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

#### 1. Numerosity

If "the class is so large that joinder of all members is impracticable[,]" the numerosity requirement is satisfied. Fed. R. Civ. P. 23(a)(1). Here, the numerosity requirement is satisfied as the proposed Settlement Class consists of thousands of TDC holders and joinder of all class members is impracticable.

#### 2. Commonality

"The crux of . . . commonality [is] the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). The common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Plaintiffs point out the following questions of law and fact common to the class: (1) whether Target's TDC processing practices violate the TDC Agreement; and (2) whether the TDC Agreement and allegedly deceptive TDC marketing injured all Settlement Class members through imposition of RPFs. Doc. 155-1 at 30. The Court finds that determination of the truth or falsity of Target's TDC processing or marketing mechanisms would necessarily determine the validity of these questions for each class member. Accordingly, the commonality requirement is satisfied.

#### 3. Typicality

Typicality requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). The Ninth Circuit has found the typicality requirement satisfied when the named plaintiffs do not set forth different claims or subject a defendant to setting forth unique defenses from those brought

by any other class member. *See e.g., Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995). Plaintiffs contend the typicality requirement is satisfied because "[The named] Plaintiffs' claims are reasonably coextensive with those of the absent [class] members[.]" Doc. 155-1 at 30. The Court agrees, and, moreover, the named plaintiffs here suffered the same injuries due to the same practices as the absent class members. As such, the typicality requirement is satisfied.

### 4. Adequacy

Adequacy evaluates whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A named plaintiff adequately represents a class if the plaintiff "does not have conflicts of interest with the proposed class" and is "represented by qualified and competent counsel." *See Wal-Mart Stores, Inc.*, 564 U.S. at 350 n.5. Here, the Court agrees with Plaintiffs' contention that their interests coexist with the absent class members in that both have the same interest in the Settlement's relief, relief from TDC fees. The Court also finds that class counsel is competent due to class counsel's purported experience in litigation, certification, trial and settlement of nationwide class action cases. *See* Doc. 155-3 at 3. Accordingly, the adequacy requirement is satisfied.

Therefore, Plaintiffs satisfied each Rule 23(a) class certification prerequisite.

### 5. Type of Class Action

Plaintiff contend that certification is appropriate here because "questions of law or fact common to members of the Settlement Class predominate over any questions affecting only individual members," and the superior method of fairly and efficiently adjudicating the action is through class action. Doc. 155-1 at 31 (citing Fed. R. Civ. P. 23(b)(3)).

Predominance weighs "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). "Rule 23(b)(3) requires a showing that questions common to the class predominate." *Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013). The predominance requirement is satisfied as questions of fact and law

7

common to the Settlement Class, such as class members' contractual relationship with Target via the TDC Agreement or Target's liability for the RPF fees, outweigh any individual issues that may arise. Despite Plaintiffs' failure to assert any viable contention that class action is superior to other available methods, it plainly evident to the Court that class action is the superior method for fair and efficient adjudication here. *See* Doc. 155-1 at 31-32; Fed. R. Civ. P. 23(b)(3)(A)-(D). As such, the Court could certify the Settlement Class under Rule 23(b)(3).

Notwithstanding, Plaintiffs also pursued conditional certification under Rule 23(b)(2). A class action can be maintained under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2)'s requirements "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole. *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (citation omitted). The Court finds that the imposition of and relief from Target's RPF fees related to its TDC is ground that applies generally to the class. Here, the Parties have agreed that Target will change its business practices as it pertains to RPFs associated with its TDC in a manner which applies uniformly to the Settlement Class. As such, Rule 23(b)(2) is satisfied and the Court certifies the class under this rule.

For the above-mentioned reasons, the Settlement Class defined as "All TDC holders in the United States who, within the Class Period, incurred at least one RPF in connection with their TDC, that was not refunded or waived[]" is certified for settlement purposes.

### B. Settlement Terms

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The court's responsibility at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *See* Manual for Complex

Litigation, Fourth § 21.632 (FJC 2004). If "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval[,]" then preliminary approval the settlements should granted. *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (FJC 1985)).

### 1. Product of Non-collusive Negotiations

"Settlements reached with the help of a mediator are likely non-collusive." *Barbosa v. MediCredit, Inc.*, at *6 (C.D. Cal. May 1, 2015) (citing *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.")). The Parties here engaged in formal mediation before an experienced mediator for a full day, after completing discovery. The Parties thereafter continued their settlement discussions for several weeks, following mediation, with the mediator's assistance. As such, the Court finds that this settlement was the product of arm's-length negotiation. Accordingly, the Court finds this factor weighs in favor of approval.

### 2. No Obvious Deficiencies

"[S]ettlement avoids the risks of extreme results on either end, *i.e.*, complete or no recovery. Thus, it is plainly reasonable for the parties at this stage to agree that the actual recovery realized, and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3 (Nov. 14, 2013). The Court concludes that no obvious deficiencies to the settlement exists here. The Settlement includes monetary relief of a $5,000,000 cash fund and $3,222,230 in debt reduction funds and non-monetary relief consisting of modification of TDC disclosures, an increase in minimum transaction amount before assessing an RPF, and a commitment that RPFs will not exceed the transaction mount that incurred the fee. *See* Doc. 155-2 at 7. Depending on the damages model referenced, Plaintiffs contend the $5,000,000 cash settlement alone provides the Settlement Class approximately 20%-40%

of their probable damages, without the attendant risk of further litigation. Doc. 155-1 at 23. The Parties agree that settlement prevails over the risk of continued litigation. *See* Doc. 155-3 at 7-8. Continued litigation could prove to be difficult, expensive, time consuming, and possibly fruitless as motions for class certification and summary judgment were contested and pending prior to settlement. Thus, this factor tilts in favor of approval.

### 3. No Preferential Treatment

"Although [the Ninth Circuit] ha[s] approved incentive awards for class representatives in some cases, [it has instructed] district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (reversing the district court's class action settlement approval). In *Radcliffe*, the court questioned, but did not determine, "whether class representatives could be expected to fairly evaluate awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards." *Id.* at 1165. The Ninth Circuit in *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015) revealed that it examines the following factors when evaluating incentive awards: "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.* at 947 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).

Here, the class representative service awards amounts are reasonable in light of the time, effort, and risk each class representative assumed. Plaintiff Walters will apply for an award not exceeding $10,000[6], and Plaintiffs Dixon, Powell, and Polcare will apply for an award not exceeding $3,000. Doc. 155-1 at 15. Using the *Staton* factors, each named plaintiff is receiving an incentive award under the Settlement Agreement, the maximum amount of incentive awards, collectively, would equate to less than one percent of the total

---

[6] In the Long Form Notice, the Parties represent that Class Counsel will request Class Representative Service award not to exceed $7,500 for Plaintiff Walters. Doc. 155-2 at 37. The Court will evaluate the amount and reasoning supporting the request for Plaintiff Walters' Class Representative Service Award before final approval is granted.

10

settlement amount, and each payment is capped at a modest amount. These awards merely compensate the class representatives for the risk they assumed and the successful assistance they provided in this case. For example, the class representatives submitted to interviews with Class Counsel, located and forwarded responsive documents and information, and participated in conferences with Class Counsel. Doc. 155-3 at 6-7. Specifically, Plaintiff Walters provided discovery documents and sat for deposition. *Id.* The Court finds the class representatives adequately represent the class in light of their levels of participation in a complicated case in which the absent class members will receive favorable monetary and non-monetary relief without any effort. Accordingly, this factor favors approval.

### 4. Effectiveness of Distribution of Class Relief

The Court finds the method of processing and distributing class-member claims is adequate. Here, the Settlement Class members do not have to submit claims to receive relief benefits because the settlement administrator will automatically distribute the Settlement Class Member Cash Payments and the Debt Relief Payments. Doc. 155-3 at 6. In fact, the Settlement Administrator will distribute the Net Settlement Fund to the Settlement Class within 30 days following the Effective Date, as contemplated in the Settlement Agreement. *Id.*; Doc. 155-2 at 4. The Settlement Administrator will mail check payments to the Settlement Class from the Net Settlement Fund. Doc. 155-2 at 13. Within 15 business days of this order, Target will provide the Settlement Administrator with the following Settlement Class members' information:

> "(i) name; (ii) last known e-mail address if available; (iii) last known mailing address; (iv) TDC Account Number or some sort of unique identifier that can be used to identify each separate Settlement Class member; (v) the date and amount of the first RPF incurred by each Settlement Class member during the Class Period that has not been refunded or waived; and (vii) [*sic*] for each RPF in item number (v), an identifier that distinguishes whether the RPF was paid by the customer or remains due and owing. The Settlement Administrator shall use the data provided by Target to make the calculations required by the Settlement, and the Settlement Administrator shall share the calculations with Class Counsel."

Doc. 155-2 at 10 ¶ 2.5 (b).

The Settlement Agreement provides the Settlement Administrator fair and clear instructions on how to process each Settlement Class members' claim. For each class member who has paid all or part of their first RPF incurred during the Class Period, a Cash Payment will be distributed equal to that class member's *pro rata* share of the Net Settlement Fund[7] based on the dollar amount of the first RPF that class member paid. *See id.* at 8 ¶ 2.2(b)(5). Alternatively, for each class member who has not paid their first RPF incurred during the Class Period at the time Cash Payments are to be distributed, "the Debt Reduction Cash Amount will be used by Target to reduce such outstanding RPF by twenty-five percent [(25%)]." *Id.* at ¶ 2.2(b)(6).

The Court finds the effectiveness of the proposed method for processing and distributing the class relief adequate because of its clear processing guidelines and automatic distribution to absent class members. Therefore, this consideration also favors approval.

### 5. Attorneys' Fee Award and Timing of Payment

In order to determine the fairness and adequacy of a settlement, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton*, 327 F.3d at 963. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted).

In a common fund case, district courts may use either the percentage-of-the-fund method or the lodestar method to calculate an appropriate attorneys' fee award. *Viciano v.*

---

[7] The Net Settlement Fund will be divided by the number of Settlement Class members who paid at least one RPF that was not refunded or waived to determine the specific Cash Payment amount. Doc. 155-1 at 12.

*Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994). "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value[.]" *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010). When applying the percentage-of-the-fund method, an attorneys' fee award of "twenty-five percent is the 'benchmark' that district courts should award." *In re Pac. Enters. Sec. litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311). The following factors have been used as grounds to adjust the percentage upward or downward: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards in similar cases. *Monterrubio v. Best Buy Stores, LP*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citation omitted); *Craft v. San Bernardino*, 624 F.Supp.2d 1113, 1116-17 (C.D. Cal. 2008). Any class member must be allowed an opportunity to object to the fee motion itself, aside from any objection the class member may have to the preliminary notice that such a motion will be filed. *See In re Mercury Interactive Corp. Sec. Litig.* 618 F.3d 988, 993-95 (9th Cir. 2010).

Under the Settlement Agreement, the Parties have agreed that Class Counsel can apply for an award from the Settlement not to exceed 30% ($2,466,699) of the Settlement Value. Doc. 155-2 at 14. Class Counsel is also entitled to "apply for reimbursement for costs and expenses incurred in the Actions." *Ibid.* The Settlement Administrator is required to pay Class Counsel from the Settlement Fund within 10 days of the Effective under the Settlement Agreement. *Id.* at 15. The Court will scrutinize Class Counsel's request for an award of Class Counsel's attorneys' fees, costs, and expenses upon filing of the motion for final approval of class action settlement. At this point, the Court finds the

Class Counsel's award provision reasonable because of its language that Class Counsel may *apply* for an award *not to exceed* 30% of the Settlement value.

Class Counsel offers no contentions about the fees it will seek at this point. Notwithstanding, the Court advises that circumstances necessitating an attorneys' fee award that exceeds the 25% benchmark are not obvious here. *See Six (6) Mexican Workers*, 904 F.2d at 1311(affirming a twenty-five percent award where "the litigation lasted more than 13 years, obtained substantial success, and involved complicated legal and factual issues"). For that reason, the Court suggests Class Counsel file a thorough fee award motion prior to the Final Approval Hearing that details the hours reasonably spent representing Plaintiffs in this action. Class Counsel must also address each of the 25% benchmark adjustment factors identified above.

### C. Notice Program

For a Rule 23(b)(2) class, the court may direct appropriate notice. Fed. R. Civ. P. 23(c)(2)(A). In the class action settlement context, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.3d 114, 120 (8th Cir. 1975) (see citing 7A C. Wright and A. Miller, Federal Practice and Procedure, Civil s 1797 at 237 (1972)).

The Court approves the Notice Program pursuant to the modifications discussed below. Here, the notice consists of three layers: (1) email notice to Settlement Class members for whom Target maintains their email addresses (Email Notice"); (2) direct mail postcard notice to all Settlement Class members for whom Target does not have an email address ("Postcard Notice"); and (3) Long Form Notice ("Long Form") containing further settlement details, available via the settlement website and via U.S. mail upon request. *See* Doc. 155-2 at 27-39. The Long Form informs each class member that they can "object to any part of the Settlement, the Settlement as a whole, Class Counsel's requests for fees and

1 expenses and/or Class Counsel's request for Service Awards for the Class
2 Representatives." *See* Doc. 155-2 at 37. The Long Form and the Settlement agreement,
3 as currently drafted, demand that any objection by a class member be made, by letter,
4 including the following to be valid: (1) the case name and number; (2) the objector's name,
5 address, telephone number, and signature; (3) an explanation of the nature of the objection;
6 (4) citation to any legal authority supporting the proposed objection; (5) the number of
7 times the objector has objected to a class action settlement in the past five years and the
8 caption of the caption for any such case(s); (6) the name of any counsel representing the
9 objector; and (7) a statement indicating whether the objector will appear at the Final
10 Approval hearing. *See* Doc. 155-2 at 12, 37. However, the Court finds these objection
11 requirements to be too onerous on a potential objector in light of the requirements set forth
12 in Rule 23(e)(5)(A). *See* Fed. R. Civ. P. 23(e)(5)(A) ("[O]bjection must state whether it
13 applies only to the objector, to a specific subset of the class, or to the entire class, and also
14 state with specificity the grounds for the objection."). As such, the Court instructs the
15 Parties to eliminate objection requirements (5) and (7) from the above-mentioned list.

Additionally, the Court instructs the Parties to strike, from section 15 of the Long Form, the sentence reading, "The Parties have the right to take discovery, including subpoenas and depositions, from any objector." Doc. 155-2 at 37. Upon the Court's reading, the sentence's tone and placement generates sentiments of intimidation. The Court also seeks to put the Parties and any potential objector on equal footing at this point in the litigation. As such, the Parties will not be granted an absolute right to discovery through this Notice language as it is understood that "[c]lass members who object . . . do not have an absolute right to discovery[.]" *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 619 (S.D. Cal. 2005) (compiling cases). With that in mind, if a party seeks to engage in discovery related to an objection, the Parties or any objector shall file a motion for leave to engage in discovery setting forth: (1) the nature and amount of previous discovery; (2) whether there is a reasonable basis for the discovery requests; and (3) the interests of the discovery-seeking party. *Id.* at 620.

Other than these modifications, the Court finds the Notice Program to be satisfactory. Upon the filing of this order, the Settlement Administrator, Epiq Systems, shall: (1) obtain from Target and Class Counsel the names, physical addresses, or email addresses of the Settlement Class members (to the extent reasonably available); (2) verify and update the addresses (to the extent necessary); (3) establish and maintain an automated toll-free telephone line for Settlement Class Members to call with settlement-related inquiries, to answer the class member's inquiries, and to accept requests for Long Forms to be sent in the mail; (4) establish and maintain a website as contemplated in the Settlement Agreement. *See* Doc. 155-2 at 10-11. As represented in the Settlement Agreement, the Notice Program shall be completed no later than 70 days after the entry of this order. Doc. 155-2 at 16. Moreover, the Settlement Administrator shall serve CAFA notice on the appropriate state and federal officials, with a compact disc containing all the documents required by 28 U.S.C. § 1715(b)(1)-(8). *See id.* at 19. Thus, this consideration weighs in favor of approval.

### D. Release of Claims

"[A] federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (citing *Class Plaintiffs*, 955 F.2d at 1287)). "[W]hile a release need not slavishly echo the claims in the complaint, it must appropriately track and not exceed them." *Myles v. AlliedBarton Sec. Servs., LLC*, 2014 WL 6065602, at *3 (N.D. Cal. Nov. 12, 2014) (citation omitted). The proposed releases are written in a manner such that it appears to be appropriately limited to claims arising out of the marketing of the TDC, the TDC Agreement, its fees, Target's actions alleged in the Actions, and the administration of this Settlement. This consideration weighs in favor of approval.

### V. <u>Conclusion</u>

For the reasons stated above, the Court hereby orders as follows:

1. The Court finds the settlement is preliminarily fair, reasonable, and adequate to the proposed class;
2. The following settlement class is preliminarily certified for settlement purposes under Rule 23(a) and Rule 23(b)(2):

All TDC holders in the United States who, between June 29, 2012 and **the date below**, incurred at least one RPF [Returned Payment Fee] in connection with their TDC, that was not refunded or waived.

3. Plaintiff James Walters is appointed as Class Representative in the California Action, and Plaintiffs Michelle Dixon, Charles Powell, and Deana Polcare are appointed as Class Representatives in the Minnesota Action;
4. The Notice Program is as set forth in the Settlement Agreement and modified by this order is approved, the form and content of such notices should be modified accordingly. The Court cautions the Parties to review both the Settlement Agreement and the three notices for typographical, grammatical, and punctuation errors before the Notice Program commences as the Court identified errors in review of this motion. Notwithstanding, the following schedule shall govern the filing deadlines for this settlement:
    a. Notice shall be completed no later than **February 14, 2020**;
    b. The Motion for Class Representative Service Awards and Fee and Expense Application shall be filed no later than **February 14, 2020**;
    c. Absent Settlement Class Members shall opt out or object to any part of the Settlement, the Settlement as a whole, Class Counsel's requests for fees and expenses, and/or Class Counsel's Request for Service Awards for the Class Representatives, as instructed in the Settlement and Class Notices, no later than **April 17, 2020**;
    d. The Parties' deadline to file a Motion for Final Approval of Class Action Settlement and to file a response to Absent Settlement Class Members' objections is **May 22, 2020**;

  e. Absent Class Members shall file any objection to Class Counsel's fee motion no later than **June 8, 2020**; and

  f. The Court shall hold a Final Approval of Class Action Settlement hearing on **June 22, 2020** at **10:30 a.m.**

5. The opt-out and objection procedures as set forth in the Settlement Agreement and modified by this order are approved;

6. The California Action is stayed pending final approval of the settlement; and

7. Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Kaliel PLLC, and Tycko & Zavareei LLP are appointed as Class Counsel.

**IT IS SO ORDERED.**

Dated: December 2, 2019

_____
Hon. M. James Lorenz
United States District Judge

18

3:16-cv-1678-L-MDD