1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WALTERS, MICHELLE DIXON, DEANA POLCARE and CHARLES POWELL, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>TARGET CORP.,<br><br>                    Defendant. | CASE NO. 3:16-cv-1678-L-MDD<br><br>**ORDER (1) GRANTING FINAL APPROVAL OF CLASS SETTLEMENT; (2) GRANTING IN PART AND DENYING IN PART APPLICATION FOR ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS; AND (3) JUDGMENT**<br><br>Judge: Hon. M. James Lorenz |

19

20

21

22

23

24

25

26

        Pending before the Court are Class Counsel's unopposed motions for final approval of class action settlement (Doc. 171) and application for Class Counsel's attorneys' fees, costs, and litigation expenses, as well as Class Representatives' awards (Doc. 165). The Court has considered the motions, the file in this matter and . For the reasons stated below the motion for final approval of class action settlement is granted, and the application for Class Counsel's attorneys' fees, costs, and litigation expenses, as well as Class Representatives' awards is granted in part and denied in part.

27

28

1

I.    **PROCEDURAL BACKGROUND**

This case is a putative class action focused on Defendant Target Corp.'s ("Target") alleged breach of the Target Debit Card ("TDC") Agreement and allegedly deceptive marketing of the TDC which resulted in consumers being assessed Returned Payment Fees ("RPFs") by Target when their TDC transactions are returned unpaid by their bank. Plaintiffs, James Walters, Michelle Dixon, Deana Polcare and Charles Powell ("Plaintiffs"), allege that Target "omits and misrepresents the risks of using the TDC," resulting in cardholders suffering significant fee penalties when the checking account linked to their TDC has insufficient funds. (Doc. 170.) Plaintiffs further allege that the TDC card agreements fail to properly describe how the TDC operates on a slower Automated Clearinghouse Network, unlike other debit card networks, causing customers to incur fees for insufficient funds as the TDC does not transmit requests to consumers' banks for days after a purchase. (*Id.*)

A significant amount of pretrial activity followed in the California Action. Target moved to dismiss the California Action under Federal Rule of Civil Procedure 12(b)(6), on the basis that the Amended Complaint failed to state a cause of action (Doc. 8). This Court agreed in part and disagreed in part, and dismissed some of the causes of action. (Doc. 13.) Target moved for reconsideration, seeking dismissal of further counts (Doc. 30), which this Court granted in part and denied in part (Doc. 32). Target answered and then amended its answer to the First Amended Complaint, asserting 14 affirmative defenses. (Doc. 59.)

Thereafter, the Parties engaged in extensive fact and class discovery. Target produced nearly 5,000 pages of documents that Class Counsel reviewed. Target deposed Plaintiff Walters. Class Counsel took eight depositions of Target's corporate representatives and employees, and of the third parties involved in processing TDC transactions. The Parties also retained experts and exchanged expert reports.

1    After the close of fact discovery, Target filed a Motion for Summary Judgment, which
2    Plaintiff Walters opposed and remained pending at the time the parties agreed to the
3    Settlement. (Docs. 90). Plaintiff Walters filed a Motion for Class Certification, which Target
4    opposed and also remained pending at the time of the Settlement. (Docs. 98, 130).

5    On September 12, 2018, Plaintiffs Dixon and Powell filed the Minnesota Action
6    alleging wrongdoing by Target similar to that alleged in the California Action. (D. Minn.
7    Case No. :18-cv-02660-PAM-DTS, Doc. 1). An Amended Complaint in the Minnesota
8    Action on January 22, 2019, added Plaintiff Polcare and a count for violating New York
9    General Business Law § 349. (D. Minn. Case No. :18-cv-02660-PAM-DTS, Doc. 19).

10   On March 14, 2019, the Parties mediated the Action in Los Angeles, California, with
11   Robert J. Meyer, Esq. The case did not settle that day, but with Mr. Meyer's assistance, the
12   Parties continued negotiations over the next several weeks, agreeing to the Settlement's
13   material terms in April of 2019. On April 29, 2019, the Parties filed a Notice of Settlement
14   advising the Court that the Parties had reached an agreement to settle the Action. (Doc.
15   148). The Parties also filed a Notice of Settlement in the Minnesota Action, resulting in an
16   order staying that case pending the settlement approval process in this case. (Minnesota
17   Action Docs. 30, 31). On June 14, 2019, the Parties signed the Agreement.

18   On June 19, 2019, Plaintiff Walters filed a Motion for Preliminary Approval of Class
19   Settlement and Certification of Settlement Class. (Doc. 155). This Court granted Preliminary
20   Approval on December 2, 2019, and thereafter amended its order on December 6, 2019
21   (Docs. 161, 162).

22   On February 14, 2020, pursuant to the Court's Amended Order Granting Preliminary
23   Approval, Class Counsel filed its Application for Attorneys' Fees and Costs, and Service
24   Awards. (Doc. 165). Pursuant to the Terms of the Settlement Agreement, Plaintiff Walters
25   filed an Unopposed Motion for Leave to File Second Amended Complaint adding Plaintiffs
26   Dixon, Polcare and Powell to this action, which the Court has granted. (Docs. 166, 169).

27
28
                                           3

Plaintiffs move unopposed for certification of a settlement class, final approval of the settlement, final approval of attorneys' fees and costs award, and final approval of incentive awards for named plaintiffs.

## II.   SETTLEMENT AGREEMENT

In exchange for the release of class members' claims, the settlement agreement ("Agreement" [Doc. 155-2]) provides four forms of consideration:

1. Target will provide monetary relief in the amount $8,222,330.00 ("Settlement Value") consisting of a Cash Settlement Amount of $5,000,000.00 and Debt Reduction Cash Amount of $3,222,330.00. Agreement ¶2.2(b)(1)-(2). The $8,222,330.00 is all for the direct benefit of the Settlement Class Members – there will be no reversion back to Target. *Id.* at ¶2.2(b)(7). Class members who did not opt-out will receive their payment automatically.

2. Target agrees not to implement or assess RPFs, or any equivalent fee, in connection with TDC transactions that are less than $7.00, for a period of two years after the Effective Date. Agreement *Id.* at ¶2.2(a)(1).

3. Beginning on or before the Effective Date, and for a minimum of two years, Target agrees that any RPFs charged will be the lesser of the RPF as disclosed by the TDC Agreement or the amount of the TDC transaction that was returned unpaid. *Id.* at ¶2.2(a)(2).

4. The Parties have worked collaboratively to amend the TDC Agreement to provide additional information to TDC holders regarding how they may incur RPFs from Target and non-sufficient funds or overdraft fees from their banks or credit unions in connection with the use of the TDC. *Id.* at ¶2.2(a)(3).

If there is any residual in the Settlement Fund after the first distribution, the residue is to be distributed to the class by way of a secondary distribution, if economically feasible. Otherwise, the residue is to be distributed as a *cy pres* award to the National Endowment for

4

Financial Education (https://www.nefe.org), a nonprofit national foundation "dedicated to inspiring empowered financial decision making for individuals and families."

A combination of email and physical mail notices were distributed to 1,027,448 class members.  (Doc. 171-4 ¶¶ 10, 11, 13 .)  No class members objected and seven class members opted-out.  (*Id.* at p. 80.)

## III.   SETTLEMENT CLASS CERTIFICATION

Plaintiffs seek settlement only class certification under Fed. R. Civ. P. 23(a) and (b)(2) & (b)(3) of the same settlement class the Court preliminarily certified: "All TDC holders in the United States who, within the Class Period, incurred at least one RPF in connection with their TDC, that was not refunded or waived." Agreement ¶2.1(a). "Class Period" means the period between June 29, 2012, and the date of the Preliminary Approval Order. *Id.* at ¶1.6.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). "A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829, 832 (9th Cir. 2013).

### A. Rule 23(a)

Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. "The Rule's four requirements – numerosity, commonality, typicality, and adequate representation – effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 564 U.S. at 349 (internal quotation marks and citations omitted).

#### 1. Numerosity

The numerosity element is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, there are hundreds of thousands of class members. The numerosity element is clearly satisfied.

### 2.  Commonality

Under Rule 23(a)(2), Plaintiffs must demonstrate that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). The Supreme Court has held that plaintiffs must demonstrate "the capacity of a class wide proceeding to generate common answers" to common questions of law or fact that are "apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (internal citations and quotations marks omitted). However, "[a]ll questions of fact and law need not be common to satisfy this rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The common contention . . . must be of such a nature that . . . its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* A single common question is sufficient to satisfy the commonality element. *Dukes*, 64 U.S. at 359. Here, the common, dispositive issue of whether Target breached the TDC Agreement in the way it processed TDC transactions satisfies the commonality element.

### 3.  Typicality

The typicality requirement of Rule 23(a)(3) focuses on the relationship of facts and issues between the class and its representatives.

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

*Dukes*, 564 U.S. 338, 349 n.5, (internal quotation marks and citation omitted). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020 (internal citations and quotation marks omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique

6

to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citations and quotation marks omitted).

Here, the named plaintiffs are typical of the class they seek to represent. They suffered the same injury from the same course of conduct as did unnamed members. To wit, like the unnamed members, Target charged them with RPFs. Named plaintiffs therefore meet the criteria of Rule 23(a)(3).

### 4. Adequacy

To serve as class representative, one must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is aimed at protecting the due process rights of absent members who will be bound by a class action judgment. *Hanlon*, 150 F.3d at 120; *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 801 (1996). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 120 (citation omitted).

As is more fully discussed below, the named plaintiffs and Class Counsel have demonstrated their ability to vigorously prosecute this action on behalf of the class. Further, the Court finds no conflict of interest between named plaintiffs and the class as a whole that would render named plaintiffs inadequate representatives.

### B. Rule 23(b)(2)

Certification pursuant to Rule 23(b)(2) is warranted. Certification under that rule is appropriate where the defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each

7

1   member of the class." *Dukes*, 564 U.S. at 360. "These requirements are unquestionably
2   satisfied when members of a putative class seek uniform injunctive or declaratory relief from
3   policies or practices that are generally applicable to the class as a whole . . . . That inquiry
4   does not require an examination of the viability or bases of the class members' claims for
5   relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like
6   predominance test, and does not require a finding that all members of the class have suffered
7   identical injuries." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (citing *Rodriguez v. Hayes*,
8   591 F.3d 1105, 1125 (9th Cir. 2010)).

9           Here, Target's policies and procedures have been applied and continue to be applied
10   uniformly to the Settlement Class. Target has agreed, subject to Final Approval, to change its
11   business practices in a manner to be applied uniformly to the Settlement Class.

12                  **C. Rule 23(b)(3)**

13          Plaintiffs seek class certification under Rule 23(b)(3). Where, as here, the requirements
14   of Rule 23(a) are met, class certification is proper under Rule 23(b)(3) if "the court finds that
15   the questions of law or fact common to class members predominate over any questions
16   affecting only individual members, and that a class action is superior to other available
17   methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3);
18   *Wang*, 709 F.3d at 832. Here, there is no dispute as to the fact that the legal question of
19   whether Target is breaching the TDC Agreement predominates and a class action is the
20   superior method by which to resolve this common question. Accordingly, the Court certifies
21   for settlement purposes only the class as defined in paragraph 2.1(a) of the Settlement
22   Agreement.

23                  **D. Notice**

24          A prerequisite to final approval is a finding of adequate notice to the class. Fed. R.
25   Civ. P. 23(e). In the preliminary approval order, the Court approved the form, content, and
26   method of providing notice proposed by the Parties. The Settlement Class Notices were

27
28
                                         8

thereafter distributed to members of the Settlement Class pursuant to the terms of the Amended Preliminary Approval Order. (Doc. 162). The Court has determined that the Class Notices given to Settlement Class members fully and accurately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members consistent with all applicable requirements. The Court further finds that the Notice Program satisfies due process and has been fully implemented.

## IV.   SETTLEMENT FAIRNESS

"[S]ettlement of class actions present[s] unique due process concerns for absent class members [in part because] class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee." *In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks and citations omitted); *see also Evans v. Jeff D.*, 475 U.S. 717, 733 (1986) (noting the possibility of tradeoff between merits relief and attorneys' fees often implicit in class action settlement negotiations.)  The Court's role in reviewing class action settlements "is to police the inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees." *Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th Cir. 2003); *see also Bluetooth*, 654 F.3d at 946.

In determining whether a class action settlement is fair, adequate, and reasonable, the Court considers whether:

(A)    the class representatives and class counsel have adequately represented the class;
(B)    the proposal was negotiated at arm's length;
(C)    the relief provided for the class is adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)    the proposal treats class members equitably relative to each other.

9

Fed. R. Civ. Proc. 23(e)(2).  Subsection (e)(2) was added to Rule 23 as a part of the 2018 amendments.  Fed. R. Civ. Proc. 23, Advisory Comm. Notes.  Prior to the amendment, the analysis was guided by the *Churchill* factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Bluetooth*, 654 F.3d at 946 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); other citation omitted).  The goal of the 2018 amendment "was not to displace any factor, but rather to focus . . . on the core concerns . . . that should guide the decision whether to approve the propos[ed settlement]."  Fed. R. Civ. Proc. 23, Advisory Comm. Notes.  Several of the *Churchill* factors were incorporated into Rule 23(e)(2) as amended.

On balance, the Court finds that the relevant factors support a finding that the proposed Settlement is fair, adequate, and reasonable.

## A. The Class Representatives and Class Counsel Have Adequately Represented the Class

The Court has already found that the Class Representatives and Class Counsel have adequately represented the Class. *See supra* § III.A.4. Based on the submissions made in support of the Attorneys' Fee Motion and Final Approval Motion, as well as the docket in this case, the Class Counsel had sufficient information to negotiate a fair Settlement and had adequately prosecuted this action with Plaintiffs' assistance.

## B. The Proposal Was Negotiated at Arm's Length

Plaintiffs and the Settlement Class, by and through their counsel, have sufficiently investigated the facts and law relating to the matters alleged in the Second Amended Complaint, including through discovery and dispositive motion practice, legal research as to the sufficiency of the claims, an evaluation of the risks associated with continued litigation, trial, and/or appeal. The Settlement was reached as a result of arm's length negotiations

between Class Counsel and counsel for Target, which occurred as a result of mediation before a neutral mediator.

### C. The Relief Provided for the Class Is Adequate

The Settlement confers substantial benefits upon the Settlement Class, without the costs, uncertainties, delays, and other risks associated with continued litigation, trial, appeal, and is fair, adequate, and reasonable. Plaintiffs faced substantial risks in proceeding including rulings on the pending Motion for Summary Judgment and Motion for Class Certification, and assuming Plaintiffs could overcome these obstacles, likely trial and appeals in the event of a class certification order or Plaintiffs' verdict.

Target has vigorously opposed Plaintiff Walter's Motion for Class Certification and could have challenged class certification on appeal. *See Rodriguez v. West Pub. Corp.*, No. CV05-3222, 2007 WL 2827379, at *8 (C.D. Cal. Sept. 10, 2007) (finding the likelihood that a certification decision would be appealed meant this factor weighed in favor of approval), *rev'd on other grounds*, 563 F.3d 948 (9th Cir. 2009). The Parties would expend significant resources in further litigation. This Settlement provides substantial relief without further delay.

Analyzing Target's class wide data, Class Counsel estimates that the best-case scenario is that damages would be approximately $25,000,000.00. Target, on the other hand, would argue that damages, if not zero, would be no more than 50% of Plaintiffs' calculation. Taking into account the Cash Settlement Amount of $5,000,000.00 alone, the Settlement Class is recovering approximately 20% or 40% (depending on the parties' opposing damage models) of estimated damages, without further risks attendant to litigation. When also taking into account the Debt Reduction Cash Amount, the Settlement Class receives approximately 33% or 66% of its most probable damages, without the further risks of litigation. The Settlement Class is also obtaining the benefit of fewer RPFs during the two-year period that Target has agreed to bind itself to the practice change. Furthermore, the upcoming changes

11

to the TDC Agreement will help Settlement Class Members and other customers avoid future RPFs because they will better understand how the TDC operates. *Id.* Accordingly, the settlement amount is fair and adequate.

The monetary relief will be distributed to Settlement Class Members by direct distribution or by a direct credit on their TDC Account. Thus, the proposed method of distribution is sufficiently effective.[1]

## D. The Proposal Treats Class Members Equitably Relative to Each Other

The apportionment of relief among Settlement Class Members treats them equitably. Each Settlement Class Member who paid at least one RPF assessed during the Class Period and not refunded or charged off is to receive a *pro rata* share of the first paid RPF from the Net Settlement Fund based on the dollar amount of the first RPF paid by the Settlement Class Member. For each Settlement Class Member who incurred an RPF during the Class Period, but has not yet paid it at the time the Settlement Class Member Cash Payments are to be distributed, the Debt Reduction Cash Amount is to be used by Target to make Debt Reduction Payments toward the outstanding balance on the Settlement Class Member's TDC account in an amount of 25% of the first RPF that was assessed and not paid.

Because each Settlement Class Member is getting a *pro rata* share of the cash or the same percentage of debt forgiveness, they are treated equitably relative to each other.

## V. ATTORNEYS' FEES

In their Application for Fees and Costs, Class Counsel request $2,466,699.00 in fees, which equates to 30% of the Settlement Value of $8,222.330.00. In granting preliminary approval, the Court required Class Counsel to submit their Application for Attorneys' Fees

---

[1] The method of processing claims and any agreement required to be identified under Rule 23(e)(3) are not relevant factors as there will be no claim submission process. Settlement Class Members will receive their relief automatically without making a claim. The counsel represent that they have entered into no side agreements. The terms of any proposed award of attorneys' fees, including timing of payment are discussed below.

and Costs well in advance of the Motion for Final Approval to give all Settlement Class members the opportunity to review Class Counsel's fee and cost request prior to the opt-out and objection deadline and respond accordingly. Class Counsel did so, filing the Application for Attorney Fees and Costs, and Service Awards on February 14, 2020. (Doc. 165). No Settlement Class Members objected.

In common fund cases such as this, the Court has discretion to employ either the percentage of the fund method or the lodestar method to calculate a proper fee award. *In re Bluetooth Headset Prods. Liab. Lit.*, 654 F.3d 935, 942 (9th Cir. 2011). In determining fees, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the Court awards some specific percentage of the fund as fees. When selecting the percentage, courts in the Ninth Circuit use 25% as the "'bench mark' percentage for the fee award," which may be adjusted upward or downward to account for the circumstances of the case. *Paul, Johnson, Alston & Hunt v. Graulty, 886* F.2d 268, 272 (9th Cir. 1989). Here, Class Counsel requests a 5% upward departure from the benchmark from the common fund, which includes the Cash Settlement Amount ($5,000,000.00) and Debt Reduction Cash Amount ($3,222,830.00) relief ("denominator"). Courts consider both cash and cash equivalents such as debt forgiveness when determining the denominator. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015).  The application of the bench mark in this case would result in an award of $2,0555,707.50 in attorneys' fees.

Class Counsel argue that the 5% upward departure is warranted, amongst other reasons, because of the injunctive relief. When the non-cash relief portion of a settlement can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total, but when it cannot be, courts should consider

the value as a relevant circumstance that could warrant an upward departure from the benchmark. *See, e.g., Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003) ("[W]here the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained . . . courts [may] include such relief as part of the value of a common fund for purposes of applying the percentage method . . . When this is not the case, courts should consider the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees, rather than as part of the fund itself.").

Class Counsel also contend that the factors enumerated in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002), also support an increase.  The factors courts commonly consider include the result obtained; the reaction of the class; the effort, experience, and skill of counsel; complexity of issues; risks of nonpayment assumed by class counsel; and comparison with counsel's lodestar.  *Ruiz v. Xpo Last Mile, Inc.*, 2017 WL 6513962 * 7 (S.D. Cal. 2017) (internal citations and quotations omitted.). As explained above under the settlement fairness analysis, the Settlement will undoubtedly benefit the Class not only monetarily but also by forcing Target to agree to limit the RPFs and amend its TDC Agreement to help make the document easier for customers to understand. It is undisputed that Class Counsel achieved this result through tenacity and skill in presenting novel and complex legal issues. This action presented the novel issue whether Target breached the TDC Agreements in the context where the debit card was "decoupled."  Given the novelty of the issue and the fact that the case was undertaken by Class Counsel on a contingent basis, they faced a risk of nonpayment. The Settlement Class Members have reacted favorably with no objections and only seven opt-outs.

The Court looks to the lodestar method as a cross check to determine whether the attorneys' fee request is reasonable.  *Bluetooth*, 654 F.3d at 942 (stating "[w]here a settlement produces a common fund for the benefit of the entire class, courts have discretion to

14

employ either the lodestar method or a percentage-of-recovery method); *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017) (stating "[a]lthough not required to do so, the district court took an extra step, cross checking this result by using the lodestar method.")

> The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.

*Bluetooth*, 654 F.3d at 941.

Class Counsel sufficiently supported their attorneys' fee request with declarations of counsel summarizing the tasks and time devoted to the prosecution of this case. The total number of hours, 2,059.25 is reasonable given the procedural background of the case. The average billing rate of approximately $582 is also reasonable, given the complexity of the case. Accordingly, the lodestar is $1,198,050. The lodestar is presumptively reasonable. *Bluetooth*, 654 F.3d at 941-42 & n.7.

In light of the lodestar, Class Counsel request for $2,466,699.00 is unreasonably high. Awarding $2,055,707.50 based on the bench mark of 25% provides sufficient compensation for the benefit conferred on the Settlement Class, including monetary and injunctive relief, novelty of the legal issues, skill in prosecuting the case, and the risk of nonpayment. Class Counsel's application for attorneys' fees is granted to the extent of **$2,055,707.50**.

## VI. COSTS AND INCENTIVE AWARDS

Class Counsel seeks $55,192.78 in costs and litigation expenses. Upon review of the itemized lists, the Court finds the request reasonable under the circumstances of the present case.

Class Representatives request incentive awards of $10,000.00 for Plaintiff Walters and $3,000.00 each for Plaintiffs Dixon, Powell, and Polcare. The Class Notice disclosed Plaintiff Walters would request $7,500 as his award. No explanation is provided why he requests a

higher amount.  Further, none of the Class Representatives provided affidavits in support of their requests to inform the Court of the approximate amount of time they devoted to assisting Class Counsel and participating in discovery.

Incentive awards such as this "are discretionary and are intended to compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action . . .." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  The amount of the award should be related to the actual service or value the class representative provides to the class. *See id.* at 960.  Although incentive awards are "fairly typical in class actions," *id.* at 958, they "should not become routine practice," lest the representatives be "tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (internal quotation marks and citations omitted).

In the absence of declarations, $3,000 awards each to Plaintiffs Dixon, Powell, and Polcare, who became involved in this action more than two years after Plaintiff Walters, is reasonable, given that they publicly disclosed their financial difficulties for the benefit of the class.  An award of $7,500 to Plaintiff Walters is reasonable given that, in addition to publicly disclosing his financial difficulties, he also sat for a deposition.

For the foregoing reasons, Plaintiffs' application for is $55,192.78 in costs and expenses of litigation is granted.  Their application for incentive awards is granted to the extent of $7,500 to Plaintiff Walters and $3,000 each to Plaintiffs Dixon, Powell, and Polcare.

## VII.   CONCLUSION AND ORDER

For the foregoing reasons, Plaintiffs' motion for final approval of class action settlement is GRANTED.  Class Counsel's application for attorneys' fees, costs and expenses of litigation, and Class Representatives' incentive awards is GRANTED IN PART AND DENIED IN PART. Class Counsel's application for attorneys' fees is granted to the extent of **$2,055,707.50** and their request for costs and litigation expenses for **$55,192.78** is

16

granted in full. The Class Representatives' application for incentive awards is granted to the extent of **$7,500** to Plaintiff Walters and **$3,000** each to Plaintiffs Dixon, Powell, and Polcare.

The Court further orders as follows:

- The Second Amended Complaint (Doc. 170) is dismissed with prejudice.
- The seven class members who opted-out and are listed on *Exhibit 1* to this Order, are not bound by the settlement agreement.
- Provided it is economically feasible, should any funds remain after the initial distribution of the class member awards, the parties shall do a second distribution to Settlement Class Members who received their class member awards, and negotiated their checks.  Should residual funds remain following a second distribution, or in the event a second distribution is not economically feasible, the Parties shall distribute the remaining funds, if any, to *cy pres* recipient, National Endowment for Financial Education.
- Upon the Effective Date, Plaintiffs and each Settlement Class Member, including any present, former, and future spouses, as well as the present, former, and future heirs, executors, estates, administrators, representatives, agents, attorneys, partners, successors, predecessors, and assigns of each of them, shall release, waive, and forever discharge Target and each of its present, former, and future parents, predecessors, successors, subsidiaries, assigns, assignees, affiliates, conservators, divisions, departments, subdivisions, owners, partners, principals, trustees, creditors, shareholders, joint venturers, co-venturers, officers, and directors (whether acting in such capacity or individually), attorneys, vendors, insurers, accountants, nominees, agents (alleged, apparent, or actual), representatives, employees, managers, administrators, and each person or entity acting or purporting to act for them or on their behalf (collectively, "Target Releasees") from any and all claims that: (a) arise

17

from or relate to the conduct alleged in the Actions; (b) arise out of, relate to, or are in connection with the TDC or any fees assessed in connection with the TDC; or (c) arise out of, relate to, or are in connection with the administration of the Settlement ("Released Target Claims").

- With respect to the Released Target Claims, Plaintiffs and the Settlement Class Members shall be deemed to have, and by operation of the Settlement shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code (to the extent it is applicable, or any other similar provision under federal, state or local law to the extent any such provision is applicable), which reads:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Thus, subject to and in accordance with this Agreement, even if the Plaintiffs and/or Settlement Class Members may discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Target Claims, Plaintiffs and each Settlement Class Member shall be deemed to have and by operation of this Order, shall have, fully, finally, and forever settled and released all of the Released Target Claims. This is true whether such claims are known or unknown, suspected, or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.

18

- In addition to the releases made by Plaintiffs and the members of the Settlement Class above, Plaintiffs Walters, Dixon, Powell, and Polcare, including each and every one of their respective agents, representatives, attorneys, heirs, assigns, or any other person acting on their behalf or for their benefit, and any person claiming through them, makes the additional following general release of all claims, known or unknown, in exchange and consideration of the Settlement set forth in this Agreement. The Plaintiffs agree to a general release of the Target Releasees from all claims, demands, rights, liabilities, grievances, demands for arbitration, and causes of action of every nature and description whatsoever, known or unknown, pending or threatened, asserted or that might have been asserted, whether brought in tort or in contract, whether under state or federal or local law.

- The Court retains jurisdiction over implementation and enforcement of the Agreement.

- The Court finds that no just reason exists for delay in entering Final Judgment and, accordingly, the Clerk is hereby directed to enter Final Judgment forthwith.

- **IT IS SO ORDERED.**

Dated:  October 26, 2020

Hon. M. James Lorenz
United States District Judge

19

1
2
3

# EXHIBIT 1

4
5

Walters v. Target Corp.
Case No.: 3:16-v-1678-L-MDD

6
7

| Excluded Settlement Class members |
| --- |
| 1.Sharmallee K. Rezentes |
| 2. Julie Soria |
| 3. Brenda A. Wagner |
| 4. Barbra A. Greve |
| 5. Brittany J. Delahut |
| 6 . Linda A. Corrigan |
| 7. Robin C. Yates |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28